INEZ HUNTER
435 Woodduck Place
Apt. H., Box 15
Woodbury, Minnesota 55125
Hunterrinez@yahoo.com

DANNEZ HUNTER
P.O. Box 75472
Saint Paul, Minnesota 55175
dannezhunter@hotmail.com

RECEIVED
BY MAIL
JAN 1 4 2013
CLERK, US DISTRICT COURT
MINNEAPOLIS, MN

*IN PROPRIA PERSONA*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| INEZ HUNTER,<br>DANNEZ HUNTER<br>    Plaintiffs,<br>        vs.<br>STATE OF MINNESOTA, CITY<br>OF WOODBURY, A MUNICIPAL<br>CORPORATION, WASHINGTON<br>COUNTY, A MUNICIPAL<br>CORPORATION, WASHINGTON<br>COUNTY HOUSING AND<br>REDEVELOPMENT AUTHORITY,<br>CITY OF SAINT PAUL, A<br>MUNICIPAL CORPORATION,<br>SAINT PAUL PUBLIC HOUSING<br>AGENCY, U.S DEPARTMENT OF<br>JUSTICE, MINNESOTA<br>ATTORNEY GENERAL,  L.L.C.;<br>acting in their official capacity only<br>as top supervisors, officers,<br>investigators, employees or agents,<br>including cities, counties,<br>municipalities, and other entities<br>sited in Minnesota and Federal<br>        Defendants. | Case No._____<br>1. **Health Portability and Accountability Act of 1996 ("HIPPAA") Pub.L. No. 104-191, 110 Stat. 1936 as Amended by the Health Information Technology For Economic and Clinical Health ("HITECH")**<br>2. **Minnesota Health Records Act, Minn. Stat. §144.291 *et. seq.;***<br>3. **Minnesota Statute 2010 Statutes Chpt. §481 Section 07 – Collusion**<br>4. **Retaliation – Minnesota Stat.§ 504B.285**<br>5. **The Fair Housing Amendments Act of 1988**<br>6. **The Cartwright Act**<br>7. **Minnesota False Advertising Law**<br>8. **Invasion of Privacy**<br><br>**(JURY TRIAL IS DEMANDED )** |

    To vindicate the public's interest, Plaintiff Inez Hunter ("Hunter") hereby brings forth this class action triable issue and hereby states and alleges as follows:

SCANNED
JAN 1 4 2013
U.S. DISTRICT COURT MPLS

1

# INTRODUCTION

1.   To vindicate the public's interest, the Plaintiff Inez Hunter, Volunteer Elementary Tutor, and her son Dannez Hunter, Owner of **"Afristocks.com," "Afghanitrade.com," "Brazitrade.com;"** hereby, brings forth this **"Antitrust and Collusion Activities"** pursuant, the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §3610, Fair Housing Act ("FHA") against the Defendant Entities City of Woodbury, Washington County, City of Saint Paul, Saint Paul Public Housing Agency Division Section 8 Program, State of Minnesota, Minnesota Attorney General, the U.S. Department of Justice, Minneapolis Department of Justice, Leah C. Janus, Fredrikson & Byron in their official capacity to have engaged in **"quid quo pro" "collusion" favors/deals"** by **"aid and abetting"** Washington County HRA ("WCHRA"),        Corona        Serrano        and        her        "Senior        Top Supervisors/Officials/Commissioners/Executive    Directors"    with    carrying    out    a **"Vendetta Forced Gentrification Scheme,"** and serving the **"Senior Citizen Vulnerable Adult"** with the **"Seventh Eviction Notice"** for her refusal to **"sign/execute"** her name on "Torfeasor Error HIPAA Medical forms, and Tortfeasor Error Investigation forms in case 12-SC-2008MJD/AJB, thus constituting violations of **Health Insurance Portability and Accountability Act of 1996 ("HIPPAA")** Pub. L. No. 104-191, 110 Stat. §1936 as amended by the **Health Information Technology For Economic and Clinical Health ("HITECH")** Act, Pub. L., No. 111-5, 123 Stat., 226, and Department of Health and Human Services Regulations at 45 C.F.R., §160 *et. seq.;* the Minnesota Health Records Act, Minn. Stat. § 144.291 *et. seq;* Minnesota consumer protection laws, Minn. Stat. Ch. §§ 325D.43  *et. seq.* & 325F.68. *et. seq.,* Minnesota Advertising Law, the Cartwright Act, Minnesota Statute 2010 Statutes Chpt. § 481.07 – **Collusion,** Retaliation – Minnesota Stat. §504B.285, and Civil Rights Act of §1866, The Fair Housing Amendments Act of 1988, Breach of Statutory Duty, Vicarious Liability, Sherman Act 15 U.S.C. §1, and Clayton Act 15 U.S.C. §15(a). (Exhs. 300, 301, 302, 303, 304, 350, 351, 600, 601, 602, 603, 604, 605, 607)

2.     The Plaintiff asserts the Defendants Entities committed Federal offense by perpetuating "felony discriminatory policies ("Policy") and practices ("Practice") against Hunter, and were carried-out said Entities "Vendetta Gentrification Scheme" of **"institutionalized racism"** by attempting to degrade, humiliate, and ban the bereaved from entering into housing over more than a 300+ square mile radius and 5 state region, as well as, kick her in the streets in the middle of the winter, thus constituting class, disability, age, and "Familial Status" discrimination in violation of then Fair Housing Act, and Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1, and Minnesota Statute §481.07 for Collusion.

3.     Plaintiff Dannez Hunter asserts that is was printed in the newspaper and President Obama announced Afghanistan had more than **$1 trillion dollars in "Lithium,"** ("emphasis added") for the creation for the next generation of future products and before the announcement was finished Hunter had purchased **Afghanitrade.com.** In the interim, the United States designated Afghanistan as favorite nation status, and on December 11, 2013, there was a Presidential damage control press release. However, the Minnesota government employees did not have a sincere agenda, and sought through "unfair business practices" to derail emerging market stock exchanges in Afghanistan, Africa, as well as, a trading platform for Brazil by the implementation of a "Forced Gentrification" scheme, as Defendant Entities targeted the Hunter's family to ban them from entering into housing over a 300+ square mile radius.

4.     The above acts follow a wicked group of people chopping four underwater cables in 2 weeks on each coast of Africa for data cables linking East Africa to the Middle East and Europe Eastern Africa Submarine Cable System (EASSy), the Europe India Gateway (EIG) and the South East Asia Middle East Western Europe-3 (SEA-ME-WE-3).

5.     Plaintiff Inez Hunter and Dannez Hunter brings this action pursuant the Fourteenth Amendment of the U.S. Constitution and Minnesota common law invasion of privacy. To date, said Defendant Entities, State of Minnesota, City of Saint Paul,

3

Washington County, City of Woodbury, Washington County HRA, ("WCHRA"), and the Public Housing Agency of Saint Paul, and the Minneapolis Department of Justice continue to violate Title VI of the Civil Rights Act of 1964 by scheming to ban the plaintiff from entering into housing and "Forced Gentrification Scheme" by defending collusion activities designed to suppress competition.

6.    "The United States Supreme Court long has recognized "privacy" as a fundamental constitutional right protected by the U.S. Constitution and entitled to protection from encroachment by the States, federal and unwanted third parties both under Fourth and Fourteenth Amendments and under various protections extended to the people of the United States by the Bill of Rights. To enforce those rights, the legislative branch of our federal government has adopted a "**strict approach**" to the protection of privacy interests, particularly in the past twenty years."

7.    For decades, despite government promises that "no person in the United States shall, on the grounds of race, color, or national origin, "Familial Status," or disability be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any "government funded "Subsidized Program" or "Activity" as an applicant or recipient receiving Federal Financial Assistance through HUD, MDHR, Saint Paul PHA, Canvas Mental Health, WCHRA, City of Woodbury, County of Washington, City of Saint Paul, said Defendant Entities have been complicit by committing an affirmative act by engaging in systemic Class and Familial Status Discrimination in violation of the Fair Housing Amendments Act of 1988 and Housing Discrimination against People with Mental Disabilities, 43 Am. U. L. Rev. 925 (1993-1994)).

### Summary of Wrongful Conduct of Forced Gentrification – Legal Basis

8.    Plaintiff Dannez Hunter asserts and alleges that City of Saint Paul, City of Woodbury, and Washington County, Minnesota. Department of Human Rights ("MDHR"), U.S. HUD Region V, WCHRA, Canvas Mental Health, State of Minnesota, the Minneapolis Department of Justice, the Minnesota Attorney General's Office,

4

Pondview Townhomes/Northstar Residential LLC, are in non-compliance with enforcing their statutory, regulatory and contractual civil rights obligations associated with their usage of federal housing and community tax-payer development funding.

9.      On October 17, 2012, Plaintiff Hunter asserts Washington County Housing and Redevelopment Authority, ("WCHRA") Barbara Dacy, Executive Director, Melissa Taphorn Deputy Executive Director, Melissa Taphorn Deputy Executive Director acquiesced to Cornia Serrano, Rental Assistance Specialist at 321 Braodway Ave.,Saint Paul Park, Minnesota, 55071 at around 11:00 a.m., on behalf of Al Hester, Housing Policy Director, Public Housing Agency, Saint Paul, and Dominic Mitchell, Section 8 Program manager all subdivisions, "Invaded the Disabled Tutor's Privacy." Plaintiff Hunter asserts WCHRA, County of Washington, City of Woodbury,  Saint Paul PHA, State of Minnesota, Minneapolis Department of Justice, Department of Justice, Minnesota Attorney General Defendants through acts of acquiescence turned a blind-eye to WCHRA **"terrorist campaign"** of felony **"coercion/fraudulent inducement,"** harassment, stalking, occur while sanctioning Pondview Townhomes / Northstar Residential Supervisors with carrying-out felony acts of breaking the lock on her front door, entering her apartment without authorization, riffling through her property, and threatening with wanton malice to evict the Disabled Senior Citizen in the middle of the winter in violation of the **Cold Weather Act**.

10.      Plaintiff Hunter assert and alleges that Defendant Entities WCHRA, Supervisors and City of Woodbury, City of Saint Paul, Lori Swanson, Attorney General, Department of Justice, Minn. Depart. of Hum. Rghts., and Mpls. D.O.J. Officials turned a blind-eye to Hunter being overcharged for rent in a **"kick-back Rack Scheme,"** and then sanctioned WCHRA serving the Tutor with a **"Vendetta Gentrification Eviction"** and "Notice To Vacate" on behalf of Pondview Townhomes after the bereaved "refused" to "sign/execute" her name on Tortfeasor Error **HIPPAA** Medical Forms, and Tortfeasor Error Investigation forms.

11.   Plaintiff asserts and alleges Defendant Entities WCHRA, Supervisors and City of Woodbury, City of St. Paul, Lori Swanson, Attorney General, Department of Justice, Minnesota Department of Human Rights, and Minneapolis D.O.J. Officials deliberately engaged in a **"pattern"** to ignore displaced classes of minorities being subjected to Predator Lending and the current case of a **"Rent Kick Back Vendetta Price Fixing Rack Scheme."**

12.   "Recognizing that law enforcement personnel, among others, have the ability and propensity to access any person's private information, especially that information retained by the State in connection with driver's license;" however, Congress passed legislation commonly known as the Health Insurance Portability and Accountability Act **("HIPAA")** and Health Information Technology for Economic and Clinical Health **("HITECH")** Act that prohibits third parties or any government officials or agents from gaining access to this Plaintiff's medical records and distributing such medical records to unknown third parties or unauthorized government agencies / entities. "In a separate but related vein, in 1997 the Minnesota Supreme Court first recognized the tort of "Invasion of Privacy". In addition, in the case of Police Officer Anne Marie Rasmusson, U.S. District Court of Minnesota Case No. 12-G32 SRN/JSM, the Court recognized the tort of **"Invasion of Privacy"**.

13.   Plaintiff Hunter asserts and alleges Defendant Entities WCHRA, Supervisor, City of Woodbury, Washington County, City of Saint Paul, Saint Paul PHA, Senior Management, Officials, and Commissioner's, the Mpls. Dept. of Justice , and Attorney General the State of Minnesota have subjected Disabled Plaintiff Hunter to a **"Vendetta Gentrification Scheme"** in violation of **HITECH Act,** of which, was enacted under Title XIII of the American Recovery and Reinvestment Act of 2009 (Pub.L. 111-5), HIPPAA, **HIPAA,** and state law. Defendant Entities Minneapolis Department of Justice, B. Todd Jones, Leah C. Janus Attorney At Law, and Lori Swanson Attorney General have damaged Plaintiff Hunter's life by **"aiding and abetting"** WCHRA Senior Management, Officials, and Commissioners with following Magistrate Boylan's material

instructions to quote on quote, "Get Together ("emphasis added") and file a Motion to Dismiss More Sooner than Later," against the Plaintiff, while concealing from the public the "coercion/fraudulent inducement tactics" that are a direct contributing factor for the "Price Fixing Kick Back Rent Racketeering Scheme.

14.   Plaintiff is entitled to a determination that her rights have been violated as a result of the **"quid quo pro"** deals / favor of the Mpls. D.O.J. and Attorney General Scheme and the issuance of an order enjoining all Defendant Entities Minneapolis D.O.J., and Lori Swanson, Attorney General, Leah Janus, WCHRA Senior Officials and Saint Paul Public Housing Agency Section 8, Senior Officers Dominic Mitchell, and John Gutzman, Executive Director complicit violations that warrant monetary damages for these **"Invasion of her Privacy felony acts"** and **"tag-team Vendetta Inspection"** that were carried-out with **"Collusion Racketeering Precision"** with malice and willful "pattern of abuse of authority" and intent to displace Plaintiff Hunter by a Forced Gentrification Scheme. (Exh. 500, **Eric Schumacher, Housing Inspector   is not a party to this complaint)**

15.   On December 4, 2012, Plaintiff asserts Defendant Entities WCHRA, Senior John and Jane Doe Management, City of Woodbury, City of Saint Paul, Senior Management / Officials over-stepped their authority and impugned the integrity of the State of Minnesota; while B. Todd Jones, and Lonnie Byran submitted false, misleading, and fraudulent pleadings erroneously representing insufficient service upon the D.O.J., while simultaneously on the 61st Day sanctioning WCHRA attempting to **"coerce/fraudulently induce"** the Disabled Tutor into executing her signature on Tortfeasor Error HIPAA Medical Forms and Tortfeasor Error Investigation Forms in violation of  HIPAA or the Health Information Technology for Economic and Clinical Health ("HITECH") Act.

## NATURE OF THE ACTION

16.   On October 17, 2012, of which, was the 61st day after Hunter initiated litigation in case 12-SC-2008MJD/AJB against U.S. HUD, outside of the presence of a

Court Judge or Attorney as a pro-se litigant, WCHRA Corona Serrano contacted Hunter for a **"premeditated kick back Price Fixing Rack Scheme"** during a Recertification Hearing for Hunter's Section 8 Voucher after Plaintiff made complaints that she was being **"overcharged for rent,"** as well as, Pondview/Northstar subjecting her to "Invasion of Privacy" by taking over the flow and passage of her incoming medical correspondence and/or obstructing the Legal Care Giver from receipt of a Cancer Patient's mail that doesn't have the ability to read in violation of 18 USC §§§1700, 1701, 1702, and for other reprisals acts to target Hunter because of her "familial status" of having a friend diagnosed with Cancer, or a son with a disability apply for a disability unit next door.

17.     Around or about December 13, 2011, Plaintiff Hunter asserts WCHRA C. Serrano came to her home for the "second tag team pop-up" inspection with 3 months window of time, and referred WCHRA/SMERLS Agency. Plaintiff Hunter asserts and alleges, SMERLS Attorney Agency on behalf of WCHRA and St, Paul PHA deliberately refused to comply with instruction and intentional violated Hunter's instruction concerning the settlement, while scheming with City of St. Paul officials to displace and disenfranchise African Americans from being housed in newly developed tax payer community housing development for Senior Citizens and disabled protected classes.

18.     On December 15, 2011 at the eviction hearing, the Court denied the Pondview/Northstar's' retaliatory attempt to evict the bereaved on the grounds that it was retaliatory, and ordered the proceedings to be expunged.

THE COURT: "So there will be a new rate from February until January of next year and you've agreed on that rate?" (Exh. CT 103, pg. 4, lines 8-9)

MS. JEPSEN: "**I'm not "aware" ("emphasis added") of it** so maybe we can – this is a rental increase? (Exh. CT 103, pg. 4, lines 8-9)

MS. SAUBER: "I don't have it in front of me because we don't have a lease yet. I'd have to look it up, **I'm sorry**. ("emphasis added")

THE COURT: "Essentially in **"every major respect"** ("emphasis added") the **"lease" ("emphasis added") will the same**? (Exh. CT 103, pg. 4, lines 8-9)

THE COURT: **"Lease Terms to Remain in Affect until January 31, 2013. All records and eviction action are expunged."** (Exh. CT 104, pg. 4, lines 3-5)

## JURISDICTION

19.    The Court has jurisdiction pursuant to 42 U.S.C.§ 1320d-5(d), 28 U.S.C. 1331, and 28 USC §1367.

20.    Plaintiff has provided notice of this action to the **Secretary of Health and Human Services** as required under 42 U.S.C. §1320d-5(d)(4).

21.    The Court has jurisdiction pursuant to Section 4 and 16 of the Clayton Act 15 U.S.C. §15(a) and §26, to recover treble damages, equitable relief, preliminary injunction cost of suit, and reasonable attorney fees for Defendants' violation of Section 1 of the Sherman Act 15 U.S.C. §1.   Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act 15 U.S.C. §15(a), and 28 U.S.C. § 1331, and §1337 because the actions arise under the laws of the United States.

22.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(3) and 1345 and 42 U.S.C. § 3612(o).

23.    The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over the matter. This Court has jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## VENUE

24.    Venue is proper in this judicial district pursuant to 42 U.S.C. § 1391(b) and 42 U.S.C. § 3612(o) as the Defendant Entities are located in this judicial district and the events or omissions giving rise to the claim occurred in the Minnesota judicial district. (Exhs. 69, 70, 71, 72, Non- Defendant, Maurice McGough, Director Off. Fair Housing & Equal Opp. Reg. V, dated 12/22/11)

25.    Plaintiff Hunter is eligible and resides in an LIHTC Pondview unit, and was supposed to receive a reduced monthly rental rate, each calendar year. The resident being Hunter must sign a certification attesting to, among other things, the number of family

members living in the LIHTC unit and the total anticipated annual income for the family residing in that unit, and Pondview must attest to the same.

26.     The units at Pondview Townhomes is a "dwellings" within the meaning of 42 U.S.C. § 3602(b).

27.     **WCHRA's Jurisdiction & Obligation to Investigate the Complaint** HUD has statutory authority to enforce compliance with Fair Housing Act and related statutes and regulations. 42 U.S.C.§ 3608(e) (5).

28.     The amount in controversy exceeds $75,000, excluding interests and costs.

## TIMELY FILING

29.     Plaintiff Ms. Hunter made a timely election to have the claims asserted in the Charge decided in a civil action pursuant to 42 U.S.C. § 3612(a).

## PARTIES

30.     Plaintiff Inez Hunter is a resident of the State of Minnesota and is located at 435 Woodduck Place, Apt. H., Box 15, Woodbury, Minnesota 55125.

31.     Plaintiff Dannez Hunter is a resident of the State of Minnesota and is located at P.O. Box 75472, Saint Paul, Minnesota 55175

32.     Defendant **U.S. Department of Justice**, United States Attorney General, c/o Eric Holder, Civil Rights Division, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, which can be sued under Minn. Stat. §466.01 *et. seq.*

33.     Defendant **State of Minnesota** is located at 102 State Capitol, 75 Rev. Dr. Martin Luther King, JR., Blvd. Saint Paul, Minnesota 55155-1609, which can be sued under Minn. Stat. §466.01. *et. seq.*

34.     Defendant Minnesota **Attorney General**, c/o **Lori Swanson** is located at 102 State Capitol, 75 Rev. Dr. Martin Luther King, JR., Blvd. Saint Paul, Minnesota 55155-1609, which can be sued under Minn. Stat. §466.01 *et. seq.*

35.     Defendant **Minneapolis Department of Justice**, c/o B. Todd Jones, Assistant U.S. Attorney, 300 S. Fourth Street, Room 600, Minneapolis, MN 55415, which can be sued under Minn. Stat. §466.01 *et. seq.*

36.     Defendant **City of Saint Paul,** c/o Ms. Shari Moore CMC, City Clerk's Office, 310 City Hall, 15 Kellogg Blvd., West, Saint Paul, Minnesota 55102, which can be sued under Minn. Stat. §466.01 *et. seq.*

37.     Defendant **Saint Paul Public Housing Agency, Saint Paul Section 8**, c/o Al Hester or David Palm, 555 N. Wabasha Street, Suite 300, St. Paul, MN 55102

38.     Defendant **City of Woodbury,** c/o Jody Vogl, Clerk 8301 Valley Creek Road Woodbury, MN 55125, which can be sued under Minn. Stat. §466.01 *et. seq.*

39.     Defendant **Washington County**, Government Center, which can be sued under Minn. Stat. §466.01 *et. seq.*

40.     Defendant **Washington County Housing Redevelopment Authority,** Washington County HRA, 7645 Currell Blvd, Woodbury, MN 55125; cserrano@wchra.com.,which can be sued under Minn. Stat. §466.01 *et. seq.* and 45 C.F.R. §160.103.

41.     Defendant Andrea Jepsen, Southern Minnesota Referral Legal Service, Saint Paul, Minnesota 55 East 5th Street, Ste #1000, Saint Paul, Minnesota 55101

42.     Defendants Entity in their official capacity are various cities, counties, municipalities and other entities cited in Minnesota, which can be sued under Minn. Stat. §466.01 et. seq. or other statutes, and federal departments and agencies, which can be sued under 28 U.S.C. §1346 or other statutes.

43.     Plaintiff will refer to the entities named in all the above paragraphs collectively as "Defendant Entities" or "Entity Defendants."

44.     Plaintiff Hunter asserts and alleges Defendant Corona Serrano ("Serrano"), , was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in her official capacity on behalf of Superior Supervisors at U.S. HUD/St. Paul PHA/ WCHRA as the Rental Assistant Specialist.

45.     Plaintiff asserts Corona Serrano, in December, November, and October of 2012 refused to relinquish the names of her Supervisors, which directed her to serve the Plaintiff with HIPAA Medical Tortfeasor Error Forms and Tortfeasor Investigation

Forms, while concealing that Hunter was being overcharged for rent. (Exhs. 600, 601, 602, 603, 604, 605, 607); (Exhs. 700, 701 Advertisement Rental)

46.    Official Capacity Defendants Entities Executive Directors were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as officer of WCHRA / U.S. HUD Supervisors, officers, or employees of the Defendant Entities or other federal, state, county, or municipal entities in the State of Minnesota.

47.    Plaintiff will refer to the individuals only in their Official Capacity-Defendants (with the exception of the **"Defendant Entity Commissioners"** and **"Defendant Entity Supervisors"** defined below, including **"Official Capacity-Defendant John and Jane Does"** collectively as the "Defendant Entity Personnel" or **"OC Defendants Supervisors"** or **"Official Defendant Entity"** or **"Defendant Official Entities"**.

48.    Plaintiff Hunter asserts and alleges Defendant Entities WCHRA, City of Woodbury, Washington County, Saint Paul PHA, City of Saint Paul, Senior Management/Officer/Officials were, at all times material herein, as citizens, of the United States and are residents of the State of Minnesota, duly appointed and acting in their Official capacity as City Officials and Commissioners of WCHRA, St. Paul PHA, City of Woodbury, City of Saint Paul, Washington County in the State of Minnesota.

49.    Plaintiff refers to the Defendant Entities collectively, as the "Commissioner Defendants" or Defendant Commissioners".

50.    The Supervisors/Senior Management/Senior Officer Defendants are not presently known. To date, C. Serrano has rebuffed 15 attempts to relinquish the names of her WCHRA Senior Management that directed her to commit the felony acts against Plaintiff Hunter. Plaintiff anticipated that the yet-to-be-named Supervisor Defendants who should have refrained from Vendetta Tag-Team Inspections, should not have engaged in such reprisal, and stopped the unauthorized practice and policy to **coerce / fraudulently** induce Plaintiff Hunter into executing her name on Vendetta Tortfeassor

HIPAA Forms and Tortfeasor Investigation Forms, and thus will become known through discovery.

51.     Plaintiff Hunter asserts and alleges despite training by Federal Government from Washington D.C., Defendants stepped outside the boundaries of the law, as the Department of Justice in Washington, the Minneapolis Department of Justice, and the Attorney General permitted, condoned, participated in an affirmative act, or acquiesced in this felony Vendetta Coercion Scheme to fraudulently procure Plaintiff signature on for non-public / private information on Tortfeasor Error HIPAA Forms, and knew or should have known that it was a serious felony to engage in such conduct outside the presence of a Judge or Attorney on the **"inside of discovery"** for a **pro se** disabled litigant.

52.     Plaintiff Hunter asserts and alleges Defendant Minneapolis Department of Justice B. Todd Jones Assistant Attorney General illegally hired a computer hacking cyber unit to erase the pro se litigant's legal file on her flash-drive for case 12-SC-2008. Plaintiff asserts and alleges the Minneapolis D.O.J. materially instructed a **"hacking cyber unit"** to create a folder entitled **"Prosecutorial Immunity"** on Plaintiff's Flash Drive, and when this file was deleted then her court legal file entitled **"Pondview Gentrification"** was erased and deleted on a government computer in Woodbury" located at the Woodbury Work Source Center located at 2150 Radio Drive, Woodbury, MN 55125. The Plaintiff asserts to date. In the interim, the Plaintiff asserts her "Due Process and Equal Protection" rights were violated by the Minneapolis Department of Justice, and Lonnie F. Bryan, Assistant U.S. Attorney.

FISA Amendments Act of 2008 **affront for Racketeering Clayton Act Violation**

"All that Senator Udall and I are asking for is a ballpark estimate of how many Americans have been monitored under this law, and it is disappointing that the Inspectors General cannot provide it," Sen. Wyden told Wired's Danger Room back in June. "If no one will even estimate how many Americans have had their communications collected under this law then it is all the more important that Congress act to close the 'back door searches'

loophole, to keep the government from searching for Americans' phone calls and emails without a warrant."

On Thursday this week, Sen. Wyden echoed his concerns from earlier this year by warning that the threat to the Americans' privacy "has been real and it is not **hypothetical.**"

53.     Non-Plaintiff Dannez Hunter asserts his mother's flash-drive was hacked in in front of him and her "Pondview Gentrification" legal folder deleted in his presence. Mr. Hunter is a very credible witness as a result of his last 3 ½ years' work on the $4.0 billion dollar Terminator/Matrix Felony Copyright Infringement and RICO Case that recently prevailed on December 4, 2012 in the State of Utah Case No. 2:07 –cv-552,  by recused Magistrate Clark Waddoups has recused himself. Mr. Hunter was Sophia Stewart's former Co-Chairman involving her recent victory for the Terminator/Matrix Criminal Copyright infringement case involving $3.5 billion dollar liens filed against numerous corporation.

54.     On December 20, 2012, Plaintiff Inez Hunter asserts and alleges after the Minneapolis DOJ hacked her flash drive B. Todd Jones, and Lonnie F. Bryan Attorneys filed fraudulent pleading" in the Court while impugning the integrity of the government by asserting "**sovereign immunity**" for misrepresentation. The Plaintiff asserts in the interim, Magistrate Boylan obstructed several requests of the Plaintiff to gain access to her legal file inside the courthouse so that she could litigate the case like a normal attorney.

55.     On December 20, 2012, the Plaintiff asserts B. Todd Jones, and Lonnie Bryan Minneapolis Dept. of Justice "Pondview Gentrification," engaged in affirmative complicit acts in the furtherance of a "Forced Gentrification Felony Scheme" by making it a DOJ "practice and policy" to disenfranchise "protected classes" of minorities in the State of Minnesota.

56.     Plaintiff Hunter asserts that B. Todd Jones, and Lonnie Byran, Assistant Attorneys for the Minneapolis Department of Justice made a "**Freudian Slip Confession**"

**("emphasis added")** and admitted to Congressional Probe Inquiry dated September 24, 2012 by Darrell Issa, and Charles E. Grassley, Congressmen that the Minneapolis D.O.J. have engaged in "Quid Quo Pro" Deals/Favors with the Court that have economically disenfranchised the African American in the State of Minnesota community in violations of 18 USC §241 - conspiracy against civil rights, 18 USC §242 – Deprivation of civil rights under the color of law, 18 USC §1505 – Obstructing African Americans from proceedings before a judiciary, in violation of Penal Code 95 Improper Influence Referee, 134 Preparing False Evidence, §135 Conceals Evidence, §136, §136.1, §137, 422.6 et seq. - Civil Rights Injury, §422.7 Intimidation Civil Rights, §422.9 Punishment for Civil Rights Violations, § 470 Falsification of Records, Judicial Canons of Law Rule 2.2 - Impartiality and Fairness, Rule 2.3 - Bias, Prejudice, and Harassment, Rule 2.6 - Ensuring the Right to Be Heard, Rule 2.15 - Responding to Judicial and Lawyer Misconduct:

**B. Todd Jones, /Lonnie F. Bryan D.O.J., Attorney Generals:**

"The Instance case appears to be an awkward way for Plaintiff to resolve where she can live…." (Docket Number   , page 2, dated 12/20/12)

**"QUID QUO PRO FAVOR/DEAL**

**CONFESSION WHILE IMPLICATING THE COURT"**

"The issue is not appropriate for a court of law."

**"QUID QUO PRO – SERIOUS FELONY FORCED GENTRIFICATION**

**CONFESSION BY D.O.J."**

**B. Todd Jones, /Lonnie F. Bryan D.O.J., Attorney Generals:**
"Washington County Housing and Redevelopment Authority provides such services www.shelterlistings.org.

Darrell Issa, Congressman, Charles E. Grassley, Congressional Probe:

"They cannot image what the *Gallagher* case has to do with *Newell*. (*Cite: 18 USC §1505*) Why are "high level" ("emphasis added") people making phone calls." **"Notes from meeting say it "looks like buying off St. Paul." (Anti-Trust)**

CASE 0:13-cv-00121-MJD-AJB   Document 1   Filed 01/14/13   Page 16 of 64

("emphasis added"); (Exh. 300, 301, 302, 303, 304, Congressional Letter dated 09/24/12)

57.    For three decades Saint Paul and Minneapolis Prosecutors perpetuated a disproportionate sentence scheme/policy/practice based on race to incarcerate predominately African Americans males for increased periods of incarceration in cases of pure cocaine verses crack cocaine. African Americans were disproportionately impacted and received the felonies while Caucasians received misdemeanors for the same exact criminal offense. As both groups were released to the streets Caucasians that had the misdemeanor easily received housing. However, African Americans immediately became barred from re-entry into housing which had a domino affect for rehabilitation, schooling and training in violation of ***Brown v. Board of Education***. In the event that a Caucasian person had a felony as outlined by Shaun Donovan's June 17, 2011 policy, then City of Minneapolis and Saint Paul City Officials would apply the 3 year celling cap.  However, in the event the person was African American with a felony of any type on his/her record, then City of Saint Paul City of Minneapolis, and City of Woodbury top officials and prosecutors pursued a deliberate racist campaign to ban the rehabilitated ex-felon from entering into housing, and even went to the extreme to discriminate against family member such as Inez Hunter because of her familial status of having a son with a disability apply for housing within Washington County.

58.    Dannez Hunter's felony is over 13 years old, and he went through the Department of Rehabilitation; in order to enter back into the workforce/society. However, due to Oppressive Civil Rights violations by the City of Woodbury, and the Minneapolis Department of Justice, and County of Woodbury they targeted the Hunter Family to ban both disabled family members from maintaining housing over a 300+ square mile radius by their Policy to unequally apply the application of Shaun Donovan's 3 year cap while simultaneously placing Caucasian into housing.

59.    On December 20, 2012, the Plaintiff asserts the B. Todd Jones, and Lonnie F. Bryan, Minneapolis Department of Justice subjected Ms. Hunter to a discriminatory practice and pattern to ban her from maintaining housing funded by the Federal

Government while making federal offense statements in pleading for his mother Inez Hunter to move into a Shelter. Plaintiff Hunter asserts B. Todd Jones and Lonnie F. Bryan made federal offense statements in pleading for a quid pro pro request for the court to deprive Inez Hunter from litigating in the Federal Court or to redress her complaints to the Federal Court system because of her familial status of having a disabled son apply for residence in the apartment next door, while Mpls DOJ apply a 3 year max ban for Caucasians.

60.    The Plaintiff asserts and alleges the Lonnie Bryan, Mpls. D.O.J. perpetuated a Forced Gentrification scheme by making statements to Ms. Hunter to move into a shelter after WCHRA violated her HIPAA rights, and such discrimination was based on institutionalized racism, and oppression.

61.    On December 20, 2012, Plaintiff Dannez Hunter and Inez Hunter asserts and alleges B. Todd Jones, and Lonnie F. Bryan, Mpls. D.O.J. violated the Hunter Families Civil Rights. The Mpls DOJ throug1h willfully acts of acquiescence supported in its pleadings WCHRA Federal Offense Scheme to ban Choice Voucher Section 8 Holders from transferring their vouchers into Washington County, while simultaneously hording Federal Resources collected from minorities. The Plaintiff asserts the Mpls. DOJ supported the Federal Offense Forced Gentrification Washington County Scheme that adversely impact predominately minorities and African American families by targeting his disabled mother Inez Hunter for forced gentrification and requesting a "quid quo pro" favor of the Federal Court to dismiss the case while concealing that Mpls had not filed its civil rights certifications with the Federal Government. Furthermore, the Mpls DOJ engaged in a pattern and practice to request Court Officials to Deprive African Americans from litigating civil rights cases in the Federal Court in violation of 18 USC 1505.

62.    Plaintiff Hunter asserts and alleges B. Todd Jones, Assistant Attorney Generals and Lonnie Bryan by their statements committed Federal Offense and Recklessly Endangered the life of a Disabled Senior Citizen being Inez Hunter by the

Mpls DOJ quid quo pro felony request that was designed to oppress the bereaved plaintiff's personal dignity, by severely humiliating and degrading treatment" or otherwise violates the dignity of one or more protected class persons.

63.    Plaintiff Hunter asserts B. Todd Jones, engaged in felony conduct against a disabled Senior Citizen by defending in Court a collusion **"Rack Price Fixing Scheme"** all while attempting to degrade the personality of the victim or diminishes the victim's physical or mental capacity, as well as, causes physical pain or psychological damage" in violation of 1949 Geneva Conventions or their 1977 Additional Protocols.

64.    The Plaintiff asserts the B. Todd Jones / Lonnie Bryan's D.O.J.'s admissions are evidence against Defendant Entities to legal proceedings of a confession or an accusatory statement obtained by attempting to inflict inhuman treatment upon the Plaintiff, as the severity of DOJ's Freudian slip falls within article 1 of the Torture Convention and does "shock the community", including infringing upon that party's rights and the fairness of the proceedings. (R v Oickle: see para 17 above), shock the judicial conscience (United States v Hensel 509 F Supp 1364 (1981), p 1372), abuse or degrade the proceedings (*United States v Toscanino*, 500 F. 2d. 267 (1974), p 276), and involve the state in moral defilement (The People (Attorney General) v O'Brien: see para 17 above).

65.    The Plaintiff asserts and alleges the B. Todd Jones/Lonnie Bryan DOJ, Assistant knew or should have known the "Coercion/Fraudulent Inducement Crime" to procure the execution of the pro se litigant Hunter's signature outside the presence of the Court or an attorney and the concealment of the same from the Court "could cause serious humiliation, degradation or affront to human dignity," and would cause Citizen's to invoke the Second Amendment of the United States Constitution, should Congress fail to rectify the actions of rogue oppressive government agents operating outside the guidelines of the law.

66.    Plaintiff Hunter asserts C. Serrano WCHRA s acknowledged and admitted that Senior Management had attempted to procure with regularity not only Plaintiff's

private HIPPA Tortfeasor Error Coercion Forms Medical Documents but also acquired such documents from other disabled **"predominately minority senior citizen's"** who were forced to sign under duress the Tortfeasor Error HIPPA Forms for non-public / private information for exhibits 600, 601, 602, 603, 604, 605, and 607.

67.    Defendant Entities, Defendant Supervisors at WCHRA, and Saint Paul PHA, City of Saint Paul, City of Woodbury, in Washington County Minnesota in their official capacity and Defendant Commissioners have illegal felony targeting segments of protected minority classes, hording tax payer dollars, and subverting lax enforcement of these privacy policies that has allowed Defendants to disenfranchise and displace protected class minority senior citizens that are not within the government establishment due to felony intrusion practices.

## AGENTS AND CO-CONSPIRATORS

68.    Various other persons and former or current government employees, firms and corporations not named herein as Defendants have participated and perpetuated as co-conspirators with the Defendants and have performed acts and made statements in furtherance of the conspiracy. Some of these parties as of yet are not identified. The acts alleged against the Defendants were authorized, ordered, or done by top City of Woodbury, top City of St, Paul, top state of Minnesota or federal employees, top officials, top officers, or done by their employees officers, agents, field agents, former Senior government employees, or representatives while actively engaging in the management and operation of Defendant Entities business affairs.

69.    Plaintiff Hunter assert there is a pattern in her case similar situated to the case of Anne Marie Rasmussen, Twin City Official, and municipals that deliberately Invaded Citizen's Privacy through the DVS website:

> Access to this service is for authorized personnel only conducting "official business." If you do not have the express authorization, you must exit now or face the consequences of violating Chapter 13 or the Minnesota Statutes and other laws. Further, the State of Minnesota prohibits unauthorized access, disclosure, duplication, modification, diversion, destruction, loss,

misuse, or theft of its information in accordance with the Minnesota Statutes Sections 609.87-609.891.

DVS collects and maintains electronic access data. The data may be used and disseminated for the purpose of evaluating electronic government services; to prevent unlawful intrusions into government electronic systems; or as otherwise provided by law.

"1)... misuse of the system can lead to sanction and disciplinary action; 2) ... operators may run queries only for criminal justice purposes; 3) driver's license or motor vehicle registration information can be accessed through CJDN only for performance of official duties authorized by law. 4)

70.     Plaintiff Hunter asserts and alleges the same rules that applied for the EPPD Manual which clearly states that WCHRA officers, City of Woodbury Officer of the state should not use their official position for personal gain, as did Jeffrey Von Felds Co-Owner Pondview/Northstar and former Senior Management for the Minnesota Finance Housing Authority who acquired a loan from said agency including WCHRA.

"Peace officers shall not use the authority of their position as peace officers, or information available to them due to their status as peace officers, for any purpose of personal gain, including, but not limited to, initiating or furthering personal and/or intimate interactions of any kind with persons which (sic) whom the officer has had contact while on duty."

**JESSE VENTURA, GOVERNOR**

Jesse Ventura:

**"The "whole system" is corrupted now." "Until you clean up the system,** that's what you got is **BRIBERY.** The first thing that dictator did is give the people of the Philippians two weeks to turn over all their guns or it was the death penalty. **The Second Amendment is** there... and it was put in there not for hunting or fishing like they like to say... It was put in there so that the citizen would have the ability if their government became **"Oppressive"** they could defend themselves against **"Oppressive Government," and I think that overrules..."** (Exh. 37:14 – 37:35, http://www.youtube.com/watch?v=r7WGMGHNHfw) (Exh. A, Civil Complaint, C07-5218-KLS, Retaliation Lawsuit Disabled);

http://www.justice.gov/crt/about/hce/documents/pricecomp.pdf; (Exh. B, 12–CR-178 JNE/FL, U.S. Government vs. Oluremi George, i.e. State Employee)

## STATEMENT OF FACTS

71.   Around or about 2003, according to Attorney General Lori Swanson, John Duffy owner of Duffy Development Company for the Pondview Town Homes received the following loans and tax credits from state and city entities: (City of Woodbury, Washington County Housing and Redevelopment Authority, ("HRA") Minnesota Housing Finance Agency, ("MHRA") to construct Pondview Town Homes to be managed by Northstar, where Plaintiff Hunter resides.    Below are the amounts for government funding received by Pondview:

| Amount | Type | Unit of Government |
|---|---|---|
| $73,287 | Loan | City of Woodbury |
| $100,000 | Loan | Washington Cty. HRA (Collusion) |
| $422,105 | Loan | Minnesota Housing Finance Agency |
| $350,000 | Housing Tax Credit | Minnesota Housing Finance Agency |

(Exh. 68, Attorney General Lori Swanson, letter dated December 19, 2011);
(Exh. COW100, "City of Woodbury" Loan to Pondview dated 07/15 /03 – Violation 18 USC 4, License For Coercion & Collusion)

(Exh. WCHRA100, Washington County HRA Loan to Pondview dated 07/15/03)

(Exh. MHFA100, Loan To Pondview   dated 07/ 15 /03

**Join LinkedIn and access Jeff Von Feldt's full profile.**

As a LinkedIn member, you'll join 175 million other professionals who are sharing connections, ideas, and opportunities. And it's free! You'll also be able to:
- See who you and Jeff Von Feldt know in common
- Get introduced to Jeff Von Feldt
- Contact Jeff Von Feldt directly

View Full Profile

Jeff Von Feldt's Overview

| | |
|---|---|
| Current | Board of Directors at HousingLink |
| | President at Northstar Residential, LLC |
| | Development Manager at Duffy Development Company, Inc. |
| Past | Housing Development Officer, Senior at Minnesota Housing Finance Agency |
| Education | University of Minnesota-Twin Cities |
| Connections | 52 connections |
| Websites | Company Website |
| | Company Website |

## JESSE VENTURA, GOVERNOR

Jesse Ventura:

"Well politics in America, the major problem is…**They've created a system based on "Complete Bribery".** Who can you bribe and give the most money

to....?"   **http://www.jesseventura.com/**(Listen   @:   "**33:20/40:50   Seconds**")
**"Exchange of Favors" = Judge Shopping**

"Wide Range of conduct" St. Paul benefited from a **"*quid pro quo*"** **exchange of**
**favors** **with HUD and the U.S. Department of Justice,"** whose top officials were
**eager to avoid** having the Magner vs. Gallagher case heard by the Supreme Court.
**In an apparent** exchange, HUD and the Justice Department declined to join two
lawsuits against St. Paul." (***St. Paul Housing Crackdown under fire, Pioneer***
***Press, Dated November 9, 2012***)

72.     Each Defendant state and federal government Entities acted as the Top
Official, Top Agent, Top principal, or Top Joint Venturer of, or for, other Top
Defendants with respect to felony acts herein cited, and are in violation, and common
course of conduct within their government offices as alleged by Plaintiff Hunter.

J. SAUBER:

"If it comes to this, you will be responsible for all court and legal costs and it will
be "**virtually impossible**" for you to find rental housing in the future and you may
"**lose your Section 8 Voucher.**" (Exh. 25, J. Sauber, Bragging/Campaign of
Campaign of Harassment/Threat Letter/Felony)

WCHRA, C. SERRANO/Top Officials Gentrification Scheme:

"If I do not hear from you, I will assume that you have been evicted and your
Section 8 rental assistance may be terminated effective **December 31, 2011.**"
(Exh. 53, C. Serrano Letter Dec. 8, 2011); (Exh.68,  Lori Swanson, Letter $100K
Loan HRA)

"Failure to supply this information could result in 'termination' of your Section 8
Rental assistance." (Exh. 55, Corina Serrano, "Institutionalized Racism Threat")

73.     Pondview Townhomes is received federal funding to provide housing
assistance to its residents with Disabilities such as Hunter through the use of Promissory
Notes by City of Woodbury, and loans from WCHRA loan, HUD HOME Investment
Partnership Program funds for Low Income Housing Tax Credits (LIHTC).

**74.**     Thirty-five of Pondview's forty rental units are designated as LIHT units.
Pondview Townhomes are located at 431 Wooduck Place and is a rental unit office

within the Pondview Townhomes development. **Jenel Sauber, Jane Anderson, Jeffrey Von Feldt's John Duffy, Pondview/Northstar due to case 12-SC-2008MJD/AJB are "precluded" from this current legal action, and are only named to show the nexus of the criminal Racketeering acts by state and federal officials. Furthermore, the Minnesota Department of Human Rights, and U.S. HUD Division are precluded/excluded from this complaint as Defendants.**

75.    Whenever this complaint refers to an act, deed, or transaction, of a corporation entity, the complaint is alleged the corporation or entity engaged in the act, deed or transaction, by or through its top government officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation, or entity business or affairs.

76.    Plaintiff Ms. Inez Hunter is a disabled 'Senior Citizen' elementary teacher's aide/assistant volunteer working inside a predominately Black at-risk community elementary school, and she is subsequently a tenant at Pondview Townhomes falling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h).

77.    On October 17, 2012, during the Recertification hearing, C. Serrano on behalf of Co-conspirator Supervisor's at WCHRA, and U.S. HUD engaged in "**strong-arm Racketeering tactics**". Plaintiff asserts WCHRA Supervisors and Commissioners in consort with former government employee MFHA, Jeff Von Feldts, and Owner of Pondview, at the behest of WCHRA Co-conspirators submitted Tortfeasor Error HIPPA Forms and Tortfeasor Error Investigation Forms to the bereaved Plaintiff.

78.    The Plaintiff asserts and alleges C. Serrano represented on behalf of WCHRA, Senior Management that Plaintiff Hunter's continuance on the Section 8 Voucher program was not contingent upon Hunter executing her name on said forms Tortfeassor Error Forms.

79.    Plaintiff asserts Senior Management within WCHRA and Commissioner at the behest of St. Paul PHA, and U.S. HUD, Region V Senior Management and

Commissioner's directed and/or materially instructed C. Serrano to **coerce/fraudulently induce** Hunter into existing her name on Exhibits 600, 601, 602, 603, 604, 605, and 607.

80.    Plaintiff Hunter asserts and alleges the "Felony Policy and Practice Scheme" was designed to fraudulently induce predominately minority disabled Plaintiffs' such as Hunter into executing her/their name of Tortfeasor Error HIPAA and Tortfeasor Error Investigation forms for the primary purpose carrying out a "Forced Gentrification Scheme" with malice intent to prohibit Choice Section 8 Holders from maintaining their Section 8 vouchers inside Washington County in the newly developed Pondview Townhomes properties, that were paid for by Plaintiff Hunter's tax payer dollars.  (Exhs. 300, 301, 302, 303, 304, 600, 602, 602, 603, 604, 605, 607)

## General Background of Law and Facts

81.    On October 17, 2012, Plaintiff asserts and alleges C. Serrano and her Supervisors at WCHRA interfered with Hunter exercising her Fair Housing Act Rights to redress complaints to the government branch WCHRA. Plaintiff Hunter asserts and alleges WCHRA Senior Management through C. Serrano attempted to coerce her into executing her  name of "**Tortfeasor Error Medical Records;**"  with premeditated intent to terminate Hunter's Section 8 in violation of HIPPA laws.

82.    During the Recertification hearing, C. Serrano, at the behest of Co-Conspirator government employees erroneously represented that the Vulnerable Adults continuance on Section 8 was not contingent upon her signing the "Tortfeassor Error "Medical Records Document".

83.    During said Recertification meeting, C. Serrano represented that the Pondview/Northstar informed her of a "Verbal Agreement" and/or "Quid Quo Pro" Deal/favor that allegedly superseded the Court's Order and Transcript for the Caucasian Defendants; in order to displace the Vulnerable Adult Elementary Tutor from her Townhome.

84.    Plaintiff Hunter asserts that she refused to sign the Medical Torfeassor Error Medical Forms. (Exh. 354, 355, 356, 357, C. Serrano, Obstruction of Justice Email)

85.    On   November   2,   2012,   Plaintiff   Hunter   asserts   Conspirators Pondview/Northstar provided Co-Conspirators WCHRA with a **"key to the front door"** of the building 435 Woodduck Place, Woodbury, Minnesota 55125 in a pattern **"tag-team"** government supported "Vendetta," and placed the **"Federal Offense Vendetta Gentrification Eviction"** and **"Notice to Vacate"** on her front door, of which was designed to **"oppress," humiliate and "intimate"** the Congressional Disabled Witness.

86.    Plaintiff asserts and alleges WCHRA, Supervisor subjected Hunter to an "existing" "Policy" and "Practice" of a Forced Gentrification Scheme / Vendetta Eviction for the bereaved parties refusal to execute her name on Torfeassor Error HIPAA and Tortfeassor Error Investigation Forms by WCHRA, with U.S. HUD Region V, logo exhibited on said forms, thus affirming an **"Invasion of Privacy,"** and felony pattern in violation of Minn. Stat. 609.498, 2012.

87.    Plaintiff  asserts  that  WCHRA  Co-conspirators,  attempted  to  acquire  by means of coercion/fraudulent inducement" the plaintiff signature outside the presence of the  Court  on  behalf  of  Northstar/Pondview/US  Post  Office/U.S.  HUD  without  an attorney  present  on  October  17,  2012,  thus  terminating  the  December  15,  2011 settlement agreement.

88.    Plaintiff asserts during court proceeding Attorney Andrea Jepsen wore "dual hats" during the December 15, 2011 Court proceedings for WCHRA and SMERLS by intentionally violating the Plaintiff's material instructions, as SMERLS schemed in a "pattern" to disenfranchise and push low-income residents, many of them minorities, such as Inez Hunter out of private dwellings, effectively segregating low-income minorities into depreciated value corners of the city with no **"economic opportunities"**.

**J. SAUBER FALSE AFFIDAVIT:**

"The Legal Aid Attorney said that in light of the **"lease violation," ("emphasis added"), we would probably "want to non-renew" ("emphasis added") Ms. Hunter's lease….."** (Exh: 103, page 8, Number 23 Affidavit of Jenel Sauber)

"She (Attorney Jepsen) told the judge that we would keep the lease the same for another year, <u>that her client would move out on January 31, 2013,</u> **and that we**

would agree that the eviction could be taken off her record or expunged." **(Exh. D, Court Order Dated Jan. 15, 2011); (Exh. 102, pg. 8, Line 25, J.S. Affidavit, Dated April 12, 2012)** [Violation Rules: 1.2, 1.14, 1.16/DR2-110], maintaining the integrity of the profession [Rule 8.1 & 8.13/DR 1-101 and DR 1-103]. (Armstrong & Possley, supra note 1, Jan. 10, 1999)

## "RETALIATION / MALICE INTENT,
## EXTRINSIC FRAUD

"Ms. Hunter **produced**...to "**ME**".…. showing her son had found "another address" ("emphasis added")…in court on December 15, 2011." (Exh. 102, pg. 9, line number 31, J. Sauber Fake Notarized Affidavit); **(Retaliation/Freudian Slip)** ;(Exh. 58, Court Order to be Expunged, dated Dec. 15, 2011);(Exh. CT100, CT101, CT102, CT103, CT104, CT105, CT106, Court Transcript December 15, 2011)

89.   Plaintiff asserts, and alleges the City of St. Paul, City of Woodbury, Washington County, WCHRA, St. Paul PHA actively engaged in and perpetuated segregation by secretly entering into agreements with SMERLS to disenfranchise and displace protected classes of people into down-trodden sectors of the city that had not received newly developed government funding and were farther away from the commercial districts of economic opportunity.

90.   On said date, Plaintiff Hunter asserts with her son sitting next to her that she instructed Andrea Jepsen WCHRA/SMERLS Attorney on three to four separate occasions not to "**enter**" into any agreement with the Northstar/Pondview that would "entail" forcing Plaintiff Hunter to move out of her townhome at anytime in the future.

91.   The Judge's December 15, 2011 settlement agreement did not give a "**license**" to the Conspirators or co-conspirators to commit "**4 Felonies Acts**" against Hunter as a Senior Citizen Disabled Vulnerable Adult on December 16, 2011 or anytime thereafter. The Judges December 15, 2011 Court order did not bestow upon the conspirators a "**license**" to Jenel Sauber, Property Manager or Jeff Von Feldts to commit or acquiesce to "felony acts" or **Coerce/Fraudulently Induce** Plaintiff to execute her name of False Tenant Income Certification Forms. (Exh. CT103, CT104)

92.    On December 15, 2011, the Plaintiff Hunter asserts the Judge, Court Order and the transcript did not bestow a **"license"** upon the Northstar/Pondview/WCHRA Senior Management to commit a felony by violating Hunter's First Amendment Constitutional Rights for freedom of speech rights to redress the government or interfere with Hunter's right to enjoy the property or exercise her Fair Housing Act rights.

93.    Plaintiff Hunter asserts the WCHRA, St. Paul PHA, City of Woodbury, Washington County Officials, Supervisors, and Commissioners **"Terrorist Felony Threats to Evict"** the Vulnerable Adult Plaintiff violated of Minn.Stat. §609.713, of which reflects an Intentional "pattern" of Invasion of Privacy, stalking, and harassment by the Saint Paul PHA, City of Saint Paul, City of Woodbury.

94.    The Plaintiff asserts the December 15, 2011 Settlement is a product Fraudulent Inducement and Coercion.

95.    Around or about January 10, 2012, Plaintiff Hunter asserts the Defendant Entities WCHRA, City of Woodbury, Saint Paul PHA and State of Minnesota violated and terminated the December 15, 2011 Court Order by subjecting Plaintiff Hunter **"Racketeering Rental Increase" of $955 dollars:**

  

97.    On or about 2010, Plaintiff Inez Hunter filed a police report with the Woodbury Police regarding Jenel Sauber, of Pondview management entering her residence without prior notification, on a non-emergency. Furthermore, the lock was broken to the unit by one of Pondview's care-takers.

98.     Plaintiff Hunter asserts and alleges the private housing discrimination took place in various forms which included collusion of WCHRA with Pondview/Northstar: **by Jeff Von Felds unfairly levying additional costs upon Plaintiff Hunter when renting Pondview property.** (*i.e.  Complainant 12 year old felony) See: Roisman, supra note 9. At 4* (Exh.    , Police Report, Jewelry dated 2010)

99.     Plaintiff asserts Jenel Sauber / Manager Pondview deliberately falsified the rent price of $692 for the Tenant's portion verses the actual "Rack Rent Kick Back Price" of $707 dollars that Plaintiff is paying and "collusion" Defendant/Co-Conspirator WCHRA Top Management Officials that ignored the December 15, 2012 Court Order. Plaintiff Hunter asserts J. Sauber, Pondview submitted to her Defendant Attorney Leah Janus that "Aided and Abetted" Northstar and the Minnesota Department of Human Rights who "aided and abetted" with the government "subsidized **"Racketeering Rental Rate"** in the amount of $955 dollars while advertising more square footage in the same building for $920 dollars in violation of Minnesota statute §481.07, 18 USC §1010, Clayton Act 15 U.S.C. §15(a) and §26, and Section 1 of the Sherman Act 15 U.S.C. §1. Plaintiff Hunter asserts she currently pays $955 dollars for less square footage in the similar situated Townhome Complex that is captured in the picture. (Exh.TIVF110, Rent/Portion Chart); (Exh.700, 701, Pondview Craigslist Advertisement $920 dollars for same complex) ;( Exhs. 450, 451, WCHRA Sanctioned Rent Increase against Judges December 15, 2011 Court Order); (Exh. WCHRA100,  Collusion/Hush Money From WCHRA); (Exh. 450, Rent Increase $707 – "Duel Hat" Breach of Court Order 12/15/11, U.S. Bank Cashier's Check No. 465510231, dated November 5, 2012)

100.   Plaintiff Hunter asserts Top Officials within WCHRA colluded with Pondview/Northstar by overcharging her "Racketeering Rate of $955; while WCHRA turned a blind eye to Jenel Sauber committing a felony and fraudulently preparing erroneous accounting journal entries for Exhibit TIVF109, of penal Codes §134, and §135; including Exhibits 602, 603:

| Social Security / Pension | Date | Description |
|---|---|---|
| $0.00<br><br><br><br>Exh. TIVF 114<br>Exh. TIVF 115<br>Exh. TIVF 101 | February 1, 2012 | Defendant Jenel Sauber, Pondview Residential prepared a $0.00 journal entry False Income Verification form while concealing prior years in retaliation for Plaintiff being a witness in the Tenth District Court of Washington County and opposing Northstar illegal policies for annual income in 2011 to be approximately $18,318.00 for a total of total annual income of $21,497.00. |
| $0.00<br><br><br><br>Exh. TIVF 109 | February 1, 2011 | Defendant J. Sauber, Pondview Residential prepared a $0.00 journal entry False Income Verification form while concealing prior years in retaliation for Plaintiff being a witness in the Tenth District Court of Washington County and opposing Northstar illegal policies for total |

| Social Security / Pension | Date | Description |
|---|---|---|
| | | annual income in 2011 to be approximately $20,837.00 |
| $0.00 | February 1, 2010 | Defendant J. Sauber, Pondview Residential prepared a $0.00 journal entry False Income Verification form for SSD in the year 2010 to be approximately $20,827.00 |
| RSDI: $18,317.00 Pension $1,692.00 Annual $828.00 <br><br> Exh. TIVF 108 | February 1, 2009 | Defendant J. Sauber, Pondview Residential prepared a $19,001.00 journal entry False Income Verification form while concealing prior years in retaliation for Plaintiff being a witness in the Tenth District Court of Washington County and opposing Northstar illegal policies for total annual income in 2008 to be approximately $20,827.00 |
| **SSD  $19,001.00** | February 1, 2008 | Defendant J. Sauber, Pondview Residential |

| Exh. TIVF 101 | | prepared a $19,001.00 journal entry False Income Verification form while concealing prior years in retaliation for Plaintiff being a witness in the Tenth District Court of Washington County and opposing Northstar illegal policies for total annual income in 2008 to be approximately $20,827.00 |
|---|---|---|
| Social Security / Pension | Date | Description |
| | February 1, 2008 | |

(Exhs. TIVF100, TIVF102, TIVF103, TIVF104, TIVF105, Jenel Sauber, Willful Acts of Omission, **TIVFs**, 2007 thru 2012, MDHR, HUD Cover-up)

**"J. SAUBER:**

"Today our Maintenance Tech and **myself had to enter your unit** to look for a leak…..You must provide proof he is not living there to us no later than Noon on Monday, November 28, 2011 or we will begin the process for eviction."

"If it comes to this, you will be responsible for all court and legal costs involved and **it will be "virtually impossible" for you to find rental housing in the future and you may lose your Section 8 voucher."** (Exh. 25, Jenel Saber, Threat/Conspiracy to Terminate Section 8 Voucher 11/22/11)

**"As I have stated before you may give notice to vacate if you choose." (Exh. 25; Jenel Saber, letter dated November 22, 2011)**

**J. SAUBER/NORTHSTAR FALSE AFFIDAVIT:**

**"Your Son can have a "100 year old felony" on his record without a new offense, and we according to our "Policy" would not allow him to be a resident at Pondview Townhomes, or any complex owned by Northstar."** (Exh. 79, paragraph 3); (Exhs. 84, 85, Asst. Sect. Sandra Henriquez, U.S. Dept. of Housing & Urban Development. Dated 06/17/11)

**"The Legal Aid Attorney said that in light of the "lease violation," ("emphasis added"), we would probably "<u>want to non-renew</u>" ("emphasis added") Ms. Hunter's lease….."** (Exh. 103, Page 8, Number 23 Affidavit of Jenel Sauber)

## CONTRADICTION

**ATTY. ANDREA JEPSEN, SMERLS/WCHRA ATTORNEY:**

**"I have never made any admissions regarding a client's culpability to any opponent in connection with any lawsuit without a client's permission, and if you have received statements suggesting otherwise, those statements are false."** (Exh. 99, Atty. Andrea Jepsen, File 59608, Dated 05/13/12)

WILLFUL/RETALIATORY CONCEALMENT OF<br>TENANT INCOME VERIFICATION FORMS ("TIVFs") FROM 2007<br><u>THROUGH 2011 & MR. HUNTER'S APPLICATION</u>

**"I am not 'clear' if Ms. Hunter's is saying she ("emphasis added") or 'her son' ("emphasis added") is disabled."** (Exh. 102, pg. 9, Line Number 30, J. Sauber False Affidavit Prepared by D. Hanbery Attorney dated 04/13/12 to the MDHR); (Exh.   , Concealed Apartment Application for Disability Unit by D. Hunter, 2011) ;( Exhs. TIVF100, TIVF101, TIVF102, TIVF103, TIVF104, TIVF105, Jenel Sauber, Will Acts of Omission, TIVFs **"SSD Journal Entries"** from 2007 thru 2012); (Violations: 18 U.S.C. §§§1001, 1010 and 1812, **18 USC §241** - conspiracy against civil rights, **18 USC §242** – Deprivation of civil rights under the color)

**"She does receive SSI, but I have understood it is a survivor's benefit." (Cite: pg. 3, Line Number 8, J.S. Affidavit Freudian Slip)**; (Exh. TIVF106, J. Sauber Fraud Sticker) ;( Violation: Minnesota, Statute Sec. 609.749 makes certain harassing activity a criminal offense); (Exhs. TIVF100, Fraudulent TIVFs)

**"I am not clear if Ms. Hunter is saying "she is disabled" or "her son" is disabled."**

"I deny that any of the actions "**taken by us**" ("emphasis added")..." (Exh. 103, **pg. 9, Line Number 31, J.S. Affidavit Freudian Slip**); ("Implication & Conspiracy")

"**Our actions**" ("emphasis added....i.e. John Duffy &") against Ms. Hunter and "**her son**" ("emphasis added") were all related to her having an unauthorized person...staying at her townhome from **October 3 until December 1, 2011**." (Exh. 103, Jenel Sauber Affidavit "**Signed Confession**" Affirming Criminal Behavior, pg. 9 line number 31)

## NEW JIM CROW/INSTITUTIONALIZED RACISM

**HRA – CORINO SERRANO:**

"If you have received this eviction notice due to your violation of your lease you **may lose your Section 8 Rental Assistance**." (Exh. 53, C. Serrano, Retaliation Letter); (Exhs. 67, 68, Attorney Lori Swanson, $100,000 HRA Loan); (Exh. **WCHRA100, $100k Racketeering Hush Money**)

"You can attempt to settle this suit out of court....I will assume you have been **"evicted" ("emphasis added") and your Section 8 rental assistance may be terminated.**" (Exh. 53, C. Serrano, Threat Letter Section 8 Voucher, dated 12/08/11)

HRA – C. Serrano: "If I do not hear from you, I will assume that you have been evicted and your Section 8 rental assistance **may be terminated effective Dec. 31, 2011.**" (Exh. 53, HRA C. Serrano Letter, dated Dec. 8, 2011)

**"Forced Gentrification of Disabled Adults from Safe, Descent and Sanitary Government Funded Housing Facilities"**

**101.** Plaintiff Hunter asserts Pondview Townhomes was a benefactor of the federal stimulus-funded weatherization money, and instead the bereaved Plaintiff became subject to a Forced Gentrification Scheme by WCHRA via and existing **"policy" and "practice"** to prohibit the transfer of Section 8 Choice Voucher holders from being housed in newly developed **"Safe, Descent and Sanitary"** Government Subsidized Rental Housing in Woodbury. (Exhs. WCHRA100, 350, 351)

**WCHRA EMAIL CONFESSION**

**18 U.S.C. §§§2, 3, 4, & 1001**

"From: CSerrano@wchra.com
To: dannezhunter@hotmail.com
CC: hunterinez@yahoo.com
Subject: RE: Constructive Notice of Court Transcript & Andrea Jepsen
Date: Wed, 17 Oct 2012 19:23:59 +0000
Dear Mr. Hunter,

**"Upon review of the eviction hearing court transcripts it appears I may have misspoke when speaking to your mother regarding a possible non-renewal of her lease." (Local Federal Rules 26(f), Local Rule 13, Numbers 3, 4, 5, - The Case is over based on this statement)** ;( Exh. 201, Carina Serrano, WCHRA, dated 10/17/12)

(Exh. AMR200, Scared To Death Police Officer Anne M. Rasmusson)

(Exh. CRV100, 18 USC 4 – Aiding & Abetting the Commission of Felonies)

(Exh. 800, Proof of Service by Kenny Ajedeji on Jenel Sauber/Pondview)

(Exh. 801, Proof of Service by Jamie Nelson on John Duffy/Northstar)

(Exh. 802, Proof of Service by Jamie Nelson on Jane Anderson)

(Exh. 804, Proof of Service by Jamie Nelson on Jeff Von Feldts)

(Exh. 803, Proof of Service by Dannez Hunter on Kevin Lindsey  - Second Government Obstruction of Justice)

(Exh. 803, Proof of Service by Dannez Hunter on Kevin Lindsey  - Second Government Obstruction of Justice)

(Exh. TIVF115, Jenel Sauber 2nd **Fraudulent Inducement/Coercion** Tenant Income Verification Form  - Green Sticker Instruction to sign 2012)

(Exh. TIVF114, Jenel Sauber Second **Fraudulent Inducement/Coercion** Tenant Income Verification Form  year 2012, and Concealment of year 2009)

(Exh. TIVF112, **Inez Hunter "Correction"** of **Fraudulent** Tenant Income Verification Form year 2012)

(Exh. TIVF109, Jenel Sauber 1st Fraudulent Tenant Income Verification Form year 2012, Concealment of year 2009, and "material instructions" to sign fraudulent forms)

**102.**    Those individuals that were on Energy Assistance for Pondview Townhomes filled out paperwork for the newly developed Pondview Complex; however, the Plaintiff Hunter never saw any results after the inspection for weatherization. Instead, the end units at Pondview Townhomes that were for sale basements were completed.

103.   Plaintiff Hunter asserts and alleges the City of Woodbury, Washington County, and WCHRA Executive Directors/Supervisor, City Officials, and Executive Directors under false pretenses procured Federal tax-payer dollars through Community Development Funds/Minnesota Finance Housing Authority and other government Entities to house disabled protected classes at Pondview/Northstar facilities. However, Plaintiff Hunter did not receive or see any benefit from the "subsidized weatherization funds" designated for Pondview Townhomes from tax dollars paid for by the Senior Citizen Plaintiff.

## "FORCED GENTRIFICATION SCHEME"
### AGAINST MINOIRTY DISABLED SENIORS PROTECTED CLASSES IN GOVERNMENT /TAX-PAYERS 'SUBSIDIZED' NEWLY DEVELOPED WEATHERIZED COMPLEXES

104.   Around or about 2009, Plaintiff Hunter asserts that the State of Minnesota received $130 million in stimulus-funded **"Weatherization Money"** as the federal government wanted the money spent in less than two years." The Plaintiff asserts and alleges local Minnesota State Legislatures had to approve spending of the money, and lawmakers misrepresented to the Federal Government that they wanted disadvantaged workers to get some of the jobs. Democrat Ellen Anderson of St. Paul was the chief state Senate author of the weatherization legislation.  Plaintiff asserts Anderson acknowledges she's disappointed that so many trainees can't find jobs, of which coincides with the City of St.Paul deliberately not file it's "mandatory" civil rights certification while simultaneously fleecing the government and tax payers for federal dollars.

105.   0n information and belief, Plaintiff asserts Non-Defendant Anderson has been pressuring Minnesota state agencies for information about low income and minority weatherization "worker hiring". The Plaintiff asserts Defendant Minnesota State Legislatures horded and inequitably distributed federally funded weatherization money predominately to the White Community, in the form of jobs, as minorities did not receive an **"equitable share"** nor did jobs materialize in proportion to our population tax-payer base, thus warranting a Preliminary Injunction on every federal dollar for "any

program" that comes into the state of Minnesota due to gross dereliction of duties within the Minnesota Department of Human Rights, the EEOC, the Minneapolis Department of Justice who made the "Quid Quo Pro" deals to obstruct African Americans from litigating in the Federal Courts. .

106.   Plaintiff asserts and alleges  WCHRA, City of Woodbury, the Saint Paul PHA, City of Saint Paul, City of Woodbury in the County of Washington Senior Officials, Executive Officers, Executive Directors, and Supervisors through their facially neutral laws, ordinances, and regulations, administrative policies, ("practices") related to low-income housing in the Cities have engaged **"out of the closet" "institutionalized systemic discrimination"** denying housing over a 300+ square mile radius or otherwise disenfranchised minority and/ disabled protected classes to displace Hunter and making housing un-available over a 300+ square mile radius, thus causing a  disparately impacted or effected" as said "protected class" members in violation of 42 U.S.C. §3604(a) in violation of the Fair Housing Act ("FHA"):"

### "HISTRORICAL RECORD"

**"FHA became the first federal agency to openly counsel and support segregation for "social control" for the primary purpose of an economic advantage at the expense of minorities.** The FHA operated in a racially discriminatory manner since its inception in 1937, and set itself up as the **"Protector of all White neighborhoods," using its "field agents"** to "keep African Americans and other minorities from **"buying"** and renting houses in predominately white neighborhoods," while oppressing any minority who opposed the illegal policy.

107.   In the case now before the Court, WCHRA , Executive Director, Senior Top Management, Top Officers, and Top Supervisor are recipients of Federal Funding and has implemented a existing **"Policy"** on behalf of the City of Woodbury in Washington County at the behest of City Counsel to bar the transfers of Section 8 Choice Vouchers disabled senior citizens by strategically targeting Minorities and disabled Protected classes to obstruct them from moving into the City of Woodbury into federally

subsidized properties at Pondview, while simultaneously tricking the Federal Government into continuing the fund such facilities without certifying compliance with civil rights requirement. Plaintiff asserts, the current "Policy and Existing Practice" of HUD, WCHRA consists of targeting her along with other minority disabled senior citizens, as well as, targeting minority family members due to their familial status of having a disabled family apply for an apartment within the City of Woodbury.

108.   Plaintiff asserts WCHRA, City of Woodbury in the County of Washington, City of Saint Paul, Public Housing Agency, Dominic Mitchell, and John Gutzman, Minneapolis Department of Justice through "quid quo pro" back-door deals have perpetuated **"Class Warfare,"** while hording subsided government federal dollar for the "Unfair Business Advantage" to create a **"Racial Caste System"** for **"Social Control"** and **"Economic Advantage"** that has resulted in "Forced Gentrification Scheme" in Apartheid Minnesota.

109.   The enforcement of said racially motivated policies and practice of Pondview/Northstar was coordinated at the highest level of Government through the Executive Director of WCHRA, Public Housing Agency, Section 8 Program, HUD, and the Minneapolis Department of Justice operated in consort for the furtherance of Defendants Rack Overcharge Rental Pricing Scheme in Court on December 4, 2012, the Collusion and Rack Pricing Scheme, while concealing that the City of Saint Paul has not filed its (AI Certification) with the Federal government since 2009. All those bearing the greatest responsibility must be held to account for deliberately displacing protected classes between 2009 through present under the badge of bigotry, operating under the color of their office, in violation to the color of law.

**Hunter Has Been Harmed By This Intrusion Into her Private Life & Racketeering Rental Pricing Scheme**

110.   The sheer pattern of these intrusions into Plaintiff private life demonstrates that law-enforcement Executive Directors of WCHRA, Supervisor and Officials are unfairly hostile towards Hunter's privacy and have show malice towards her safety.

111.  As a result of this "Invasion of Privacy," coercion and fraudulent inducement by WCHRA Executive Director, Top Supervisors, and Top Officials, Hunter does not feel comfortable going to public places where WCHRA personnel are likely to be around and has lost her sense of freedom including her freedom to travel and enjoy public places.

112.  As a result of this "Invasion of Privacy," where WCHRA served Plaintiff with a Gentrification Eviction and Notice to Vacate for refusal to execute her name on Tortfeasor Error HIPAA Forms and Investigation Forms, she has lost the ability to enjoy the property as a direct result of Pondview employees giving a key to the front door of the complex to place an **"Open" "Notice to Vacate"** on Hunter's front door, as the neighbors are now aware of the legal action.

## FIRST COUNT OF ACTION
*(Against Official, Supervisor, Executive Directors, and Entity Defendants, for violations of Health Portability and Accountability Act of 1996 ("HIPPAA") Pub.L. No. 104-191, 110 Stat.§ 1936 as Amended by the Health Information Technology For Economic and Clinical Health ("HITECH")*

113.  Plaintiff restates and re-alleges all prior paragraphs on this Complaint

114.  Washington County Housing Redevelopment Authority ("WCHRA"), Officials, Executive Director, Top Management Supervisors maintain more than a de minimus interest in the form of a loan, and is a represents business associates of both Pondview Townhomes and Northstar Residential as defined in HIPAA. *See e.g.* 45 C.F.R. §160.103. Because HITECH Section §13401 (42 USC §17931) provides that 45 CFR §164.308, §310, §.312, and §.316 apply to a business associate of a covered entity in the same manner as they would to a covered entity, WCHRA, City of Woodbury in the County of Washington, can be sued under Minn. Stat. §466.01 *et. seq.* under provisions contained within HIPAA as well as applicable civil and criminal penalties.

115.  Plaintiff Dannez Hunter pursuant to the **"Second Amendment"** of the United States Constitution; hereby invokes and compels the Federal Court pursuant to the **"Citizen's Arrest Procedure"** against B. Todd Jones, Assistant Attorney General,

Lonnie F. Bryan, Assistant Attorney General, for colluding with Leah Janus and submitting false, misleading and fraudulent proceedings upon the Court in violation of 18 USC §4, and 18 USC **§1001**, and requesting a "**quid quo pro**" favor of the Court on December 20, 2012. Plaintiff invokes civil penalties against Barbara Dacy, Executive Director, Melissa Taphorn Deputy Executive Director, Melissa Taphorn Deputy Executive Director, Cornia Serrano Federal Offenses that when they became "aware" that their business associates took over the flow and passage of the Plaintiff's incoming mail in violation of 18 USC 1700, 1701, and 1702, they did not contact Postal Inspectors or their business associates to prevent injury to John Doe Cancer Patient, thus constitutional intentional malice.

116.   WCHRA violated HIPAA and HITECH by attempting to coerce Plaintiff into executing her name on Tortfeasor Error HIPAA Forms, and failing to comply with the standards, requirements, and implementation specifications as set forth in HIPAA< including the following:

a.   WCHRA deliberately implemented a Forced Gentrification Policy and Procedure by attempting to coerce Plaintiff into executing her name of said HIPPA Forms to prevent the transfer of Section 8 Choice Voucher holders into the City of Woodbury located in Washington County, while simultaneously fleecing the government for more federal funding. To wit, WCHRA colluded to further the ban of Plaintiff entering housing over a 300+ plus square mile radius while failing to implement policies and procedures to prevent, detect, contain, and correct violations of 45 C.F.R. §164.308(a)(1))

b.   WCHRA failed to implement policies and procedures to ensure that disabled plaintiff's such as Hunter that protected classes medical privacy rights would not be violated by government entities or third parties who do not have authorized access from obtaining access to electronic protected health information in violation of 45 C.F.R.§ 164.308(a)(3-4)

c.   WCHRA Executive Director, Officials, and Supervisors perpetuated "institutionalized racism" by training Corona Serrano to "aid and abet" its business associates in 12-SC-2008MJD/AJB in an attempt to coerce Plaintiff into executing her name of Tortfeassor Error HIPPA Forms outside the presence of a Judge for the evil purpose of violating §422.6 et seq. - Civil Rights Injury, and 45 C.F.R. §164.308(a) (5).

d.   WCHRA Defendant Entities Executive Directors and Supervisors knew or should have known of this "Invasion of Privacy" violation and other unlawful, improper, unjustified, and impressible access to private information by WCHRA personnel.

e.   WCHRA, City of Woodbury in Washington County, and City of Saint Paul in the State of Minnesota, Minneapolis Department of Justice, and Minnesota Attorney General failed to identify and respond to suspected or known security incidents and deliberately failed to mitigate, to the extent practicable, harmful effects of security incidents that were known to them in violation of C.F.R. § 164.308(a) (6), §422.6 *et. seq.*, §422.7 - Intimidation Civil Rights, §422.9 - Punishment for Civil Rights, and 45 C.F.R. §164.308(a) (6).

f.   WCHRA Executive Director made it a felony policy and practice by its procedure to coerce Plaintiff into executing her name of Tortfeassor Error Forms and failed prevent employees from taking retaliatory action for refusal to execute said forms intended for electronic information systems in violation of 45 C.F.R. §164.310(a)(1).

g.   WCHRA, City of Woodbury in Washington County, City of Saint Paul in the State of Minnesota, Executive Directors, Top Officials, and Supervisors intentionally failed to implement policies to prevent abuse their powers and authority, under the color of government offices pertaining to medical information from being accessed only to those persons delegated authority to grant such access in violation of 45 CFR §164.312(a) (1).

h.    The prevalence of this custom, lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendant Entities and Supervisors an municipal officials of the Entity Defendants.  The customs and practices by the Minneapolis Department of Justice and "quid quo pro" under the table favor/deals further perpetuated Caucasian business associates into the false belief that they did not have to be accountable to African-Americans in a Court of law. The collusion acts by the Mpls. DOJ perpetuated and demonstrated deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiff; whereby, WCHRA served the Plaintiff with a Vendetta Gentrification Eviction and Notice to Vacate.

i.    WCHRA, City of Woodbury in Washington County, City of Saint Paul in the State of Minnesota, Executive Directors, Top Officials, and Supervisors intentionally failed to implement reasonable and appropriate policies and procedures to comply with the standards, implementation specifications, or other requirements of the Part §164,  Subpart C in violation of 45 C.F.R. §164.316.

j.    Defendant Entities liability is due to their actual and constructive knowledge of this practice, and their deliberate failure to curb such behavior, or institute any process for monitoring and preventing it and their deliberate indifference to the federal rights of those persons, including Plaintiff, who continues to be pursued by the Minneapolis Department of Justice filing a **"Response on behalf of  Pondview/Northstar to Deny Plaintiff Preliminary Injunction"** to prevent the its associates from Evicting the Senior Citizen during winter months in violation of the Cold Weather Act, thus warranting civil and **"criminal penalties"**. ("emphasis added")

117.  The Elementary Teacher Hunter has reason to believe that the interest of Minnesota residents are threatened and have adversely impacted, affected minority protected classes by all of the above violations that have been concealed from the

Federal government while the City of Saint Paul is in non-compliance with filing its' annual civil rights certification while Conspirators seize and displace minorities from newly developed housing complexes. (Exhs. 600, 601, 602, 603, 604, 605, 607)

## SECOND COUNT OF ACTION
## MINNESOTA HEALTH RECORDS ACT,
## INVASION OF PRIVACY

*(Against All Defendant Entities, Officials, Supervisors, Executive Directors, and Entity Defendants)*

118.   Plaintiff restates and re-alleges all prior paragraphs of this Complaint.

119.   The Minnesota health Records Act, Minn. Stat.§ 144.291 *et. seq.* applies to the release of health records in Minnesota. It prohibits providers or any *person who receives health records from a provider,* from releasing health unless there is:

> 1) a signed and dated consent from the patient or the patient's legally authorized representative authorizing the release; (2) specific authorization in law; or (3) a representative from the provider that holds a signed and dated consent from the patient is authorizing the release.

Minn. Stat. §144.293, subd. 2(2010) (emphasis added). The patients consent is valid for one year unless a different time is specified in the consent or is provided by law. *Id.,* subd. 4

120.   On October 17, 2012, WCHRA. Corina Serrano at 321 Braodway Ave., Saint Paul Park, Minnesota, 55071 at around 11:00 a.m., C. Serrano as an extension of WCHRA Discriminator Policy to prohibit Section 8 Choice Voucher Holders from transferring their vouchers into Washington County, Serrano attempted to Coerce Hunter into executing her name of Tortfeasor Error Forms in exchange from maintaining residency in Washington County as a part of the Forced Gentrification Scheme. Plaintiff Hunter asserts WCHRA coercion demand for her Medical Records became an Invasion of Privacy, (a) "an intrusion," (b) that was highly "offensive";  and (c) viewed as an oppressive tactics into some matter in which Hunter has a legitimate expectation of

privacy." This intentional Invasion of Privacy WCHRA was an extension of their Policy to ban Choice Voucher holders from maintaining their voucher's in Washington County.

121.   On November 2, 2012, Defendant Entity WCHRA, Cornia Serrano at the behest of Barbara Dacy, Executive Director, Melissa Taphorn, Deputy Executive Director, top officials attempted to coerce the Plaintiff into executing her name of Tortfeassor HIPPA forms, and thereafter Serrano acquired a key to personally hand deliver and place an open "Forced Gentrification Eviction Envelope" and "Notice to Vacate" on the Plaintiff's front door  on behalf of City of Woodbury Top Officials, and County of Washington

122.   WCHRA had an obligation to not degrade the personality of the victim or diminishes the victim's physical or mental capacity, as well as, causes physical pain or psychological damage" in violation of 1949 Geneva Conventions or their 1977 Additional Protocols. However, the Minneapolis Department of Lonnie F. Byran Assistant Attorney on December 4, 2012, went into Court and attempted to Defend WCHRA, and the City of Woodbury while being "aware" that WCHRA attempted to acquire plaintiff's signature on Tortfeassor Error HIPPA Medical Health Records outside the presence of a judge in violation of  Minn. Stat. §144.293, subd. 2.

123.   "The doctor-patient relationship is predicated on trust. Patients have the right to confidentiality of their medical records and to expect that their medical information will not be released without their consent.   Patient confidentiality is important to encourage a full and frank exchange of information between patients and their doctors. Patients also have the right to make informed choices about their health care (e.g. to give their informed consent") and to **withhold consent" ("emphasis added")** (i.e. Inez Hunter) following a full and frank exchange of information between the patient and doctor. Simply put, if patients have to be concerned about the dissemination of their medical information, they will not get treatment. (***State of Minnesota, Attorney General Lori Swanson vs. Accretive Health, Inc.*** Case No. 12-cv 145 RHK/JJK). (***Inez Hunter vs. HealthPartners***, 395-cv-1009 RHK/FLM - ***HIPAA***

*Winning Case*) The sequence of this to both patients and the **"state"** (**"emphasis added"**) as a whole is obvious as it relates to conditions like communicable diseases, "mental health" ("emphasis added") or management of chronic conditions." (i.e. "Invasion of Privacy" Plaintiff Mail 18 USC §§§1700, 1701, 1702, and 18 USC §4)

124. "These concepts have been part of the doctor-patient relationship for thousands of years. Over 2,500 years ago, the early Hippocratic Oath for physicians provided: "All that may come to my knowledge in the exercise of my profession…I will keep secret and will never reveal." "Today, the modern Code of Ethics of the American Medical Association requires physicians to "maintain your patient's confidentiality" and to "respect your patient's right to choose their doctor freely, to accept or reject advice and to make their own decisions about treatment or procedures." These concepts are reflected as a matter of state law and policy in the Minnesota Health Records Act, Minn. Stat. §144.291. *et. seq., supra,* which restrict the release of health records in Minnesota and which prohibits providers *and persons who receive health records from providers* from releasing health records without the patients' informed consent. The concepts are also reflected as a matter of state law and policy in the Minnesota Health Care Patient Bill of Rights, Minn. Stat. §144.651, which gives patients the right to: (1) have appropriate medical care based on their individual needs; (2) to know the identity of the physician who is responsible for coordination of their care; (3) to know the identity of outside providers; (4) to have complete information regarding diagnosis, treatment, alternatives, risk and prognosis; (5) to be respected; and (6) to have their medical records kept private and confidential." (*Inez Hunter vs. HealthPartners*)

"The Minnesota Supreme Court has said this about the right to privacy:

The right to privacy is an integral part of our humanity; one has a public persona, exposed and active, and personal persona, guarded and preserved. The heart of our liberty is choosing which part of our lives shall become public and which parts we shall hold close."

*"Lake v. Wal-Mart Stores, Inc.,* **582 N.W. 2d 231, 235 (Minn. 1998).** Most people consider medical health care records to be among the most personal, private types of information. In order to safeguard their privacy and make informed health care decisions, patients need full, transparent, and accurate information about how their medical information is used. As set out in this Complaint, WCHRA impeded those rights." **(Quotes By Lori Swanson)**

**125.** Defendant Entities engaged in intentional invasion of privacy through acts of acquiesce by turning a blind-eye, and under their authority allowing business associates breaking the lock on Hunter's front door without legal ramifications, taking over the flow and passage of Hunter's mail in violation of 18 USC 1700, 1701, 1702, entering the apartment without authorization, rifling through Hunter's property without obtaining a warrant, and **"felony stalking" by allowing the Maintenance Man Gary parking a truck outside of her window in early morning hours from 5 a.m. until 10:00.**

**126.** Plaintiff Hunter seeks to enjoin the WCHRA, City of Woodbury in Washington County, City of Saint Paul in the State of Minnesota, Minnesota Attorney General, the Minneapolis Department of Justice for further violations of Minn. Stat. §144.291 *et. seq.* **The Plaintiff asserts Defendant Entities have committed serious felonies by making a person's medical records and history as a condition for housing.**

**THREE COUNT OF ACTION**
**COLLUSION -**
**MINN. STAT. 2010 CHAPTER 481 SECTION § 07**
*(Against Official, Supervisor, Executive Directors, and Entity Defendants)*

127.   Plaintiff restates and re-alleges all prior paragraphs on this Complaint.

128.   Plaintiff asserts Defendant Entities have violated the bereaved Tutors Due Process and Equal Protection Rights pursuant to the Fifth and Fourteenth Amendment of the United States Constitution.

45

129.   On October 17, 2012, Plaintiff assert and alleges Washington County Housing and Redevelopment Authority, ("WCHRA") Barbara Dacy, Executive Director, Melissa Taphorn Deputy Executive Director, Melissa Taphorn Deputy Executive Director acquiesced to Cornia Serrano, Rental Assistance Specialist at 321 Braodway Ave., Saint Paul Park, Minnesota, 55071 at around 11:00 a.m., on behalf of Al Hester, Saint Paul PHA, Housing Policy Director, Dominic Mitchell Saint Paul PHA, Section 8 Program manager through acts of acquiescence or directly trained as a agency, supervised, or materially instructed Cornia Serrano to **"coerce/fraudulently induce"** and intimidate bereaved Hunter into executing her name on Tortfeassor Error HIPAA Medical Forms and Tortfeassor Error Investigation forms. In doing so, Defendant Entities have established a **"Federal Offense practice and policy"** that is "adversely impacting" minority protected classes of people who are being selectively targeted as minorities classes to force their release of HIPAA medical records as a "condition" of obtaining or maintaining Section 8 Housing. The premeditated wanton malice intent of Defendant Government Entities to **"abuse the usage of HIPAA Medical Information"** are evidenced by said WCHRA sanctioning their "business associates" to block/obstruct federal mail for Chemo Therapy Treatments over a 6 month period with intent to cause great bodily  in the furtherance of Washington County's **Felony Policy and Practice** to prohibit the transfer of minorities with disability or pre-existing condition of disability from entering into or maintaining residence in the City of Woodbury and Washington County, all will requesting and **"Fleecing or Gouging Federal Government for more Funding"** as  Saint Paul PHA has deliberately failed to file it's annual ("AI") reports for civil rights Federal mandate Certification.

130.   On November 2, 2012, WCHRA, City of Woodbury in the County of Washington, Corona Serrano, City of Saint Paul, Executive Directors, officers, and City Officials, committed Federal Felony Offenses by acquiring a key to the front door of 435 Woodduck Place, Woodbury Minnesota 55125 around or about 12:00 high noon, for the building complex and personally **"hand-delivering"** a **"Vendetta Forced**

**Gentrification Eviction"** and **"Notice to Vacate"** in the bereaved Plaintiff front door, on behalf of its business associates, thus constituting "Collusion" **between** Pondview/Northstar and WCH RA in violation of §481.07 and PENAL CODE §175, when Duress by Threat Makes a Contract Voidable:

> (1) If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim; (2) If a party's manifestation of assent is induced by one who is not a party to the transaction, the contract is voidable **"by the victim"**.......'' (Exhs. TIVF109, 300, 301, 302, 303, 304, 350, 351, 600, 601, 602, 603, 604, 605, 607, CT100, CT101, CT102, CT103, CT104, CT105)

> a. Improper threat.....Courts originally restricted duress to threats involving loss of life, mayhem or imprisonment, but these restrictions have been greatly relaxed and, in order to constitute duress, the threat need only be improper within the rule stated in §176.

> b. No reasonable alternative. A threat, even if improper, does not amount to duress if the victim has a reasonable alternative to succumbing and fails to take advantage of it. It is sometimes said that the threat must arouse such fear as precludes a party from exercising free will and judgment or that it must be such as would induce assent on the part of a brave man or a man of ordinary firmness. The rule stated in this Section omits any such requirement because of its vagueness and impracticability. It is enough if the threat actually induces assent (see Comment c) on the part of one who has no reasonable alternative....

131.   The standard is a practical one under which account must be taken of the exigencies in which the victim finds himself, and the mere availability of a legal remedy is not controlling if it will not afford effective relief to one in the victim's circumstances....

> c. Subjective test of inducement. In order to constitute duress, the improper threat must induce the making of the contract....A party's manifestation of assent is induced by duress if the duress substantially contributes to his decision to manifest his assent. The test is subjective and the question is, did the threat actually induce assent on the part of the person claiming to be the victim of duress.

132.   On December 4, 2012, Plaintiff went to a rule Federal Rule 26 hearing in case 12-SC-2008MJD and Magistrate Boylan "materially instructed" the Minneapolis Department of Justice, Lonnie F. Bryan and Defendant Leah C. Janus to quote on quote, **"Get together and File More Sooner than Later, and File a Motion to Dismiss."** In the interim, Magistrate Boylan due to another **"quid quo pro favor"** obstructed Plaintiff from acquiring access to her legal file to litigate the case like a normal attorney. Plaintiff asserts and alleges the Minneapolis Dept. of Justice hired a cyber-hacking unit to create a folder on her flash-drive called **"Prosecutorial Immunity"**, in front of Witness Dannez Hunter, and then when the file was deleted the switcheroo occurred and deleted the "Forced Gentrification Folder" with all of the Plaintiff's legal work in violation of *The California Public Employees' Retirement System "Calpers" vs. UnitedHealth,* Case No. 06-CV-2939, U.S. Dist. Crt. MN, June 2008)

133.   Plaintiff Hunter asserts the oppressive acts sufficed to induce assent. With calculated intent the Defendant Entities Mpls. DOJ and Leah C. Janus took into account Hunter's age, background and relationship of the parties. The Plaintiff asserts and alleges the Attorney General of the State of Minnesota willfully acquiesced and turned a blind eye to the strong arm Racketeering tactics.

134.   Plaintiff Hunter asserts Defendant Entities WCHRA and City of Woodbury are formal or informal, [is] an entity separate and apart that willfully engaged in complicit acts in the furtherance of the Collusion Forced Gentrification Scheme, and WCHRA and City of Woodbury receives income for perpetuating the Federal Offense Scheme. (Exh. WCHRA100); (Exh. COW100)

**135.**   The Plaintiff asserts and alleges the Defendants Mpls. DOJ malice forethought to deceive the Federal court or a party to an action 12-SC-2008MJD/AJB or judicial proceeding by requesting the Court not entertain the Preliminary Injunction, all while concealing Shaun Donovan, Secretary of U.S. HUD June 17, 2011 Policy Letter, and are guilty of the Federal offense of 18 U.S.C. §1505 and shall be held liable to the party injured in treble damages. The Mpls. DOJ and Leah Janus Attorney "aided the

abetted" their clients and WCHRA business associates in the commission of Federal Felony Offenses and violations of §176. **WHEN A THREAT IS IMPROPER:**

(1) A threat is improper if (a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property, (b) what is threatened is a criminal prosecution, (c) what is threatened is the use of civil process and the threat is made in bad faith, or (d) the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient.

(2) A threat is improper if the resulting exchange is not on fair terms, and
(a) the threatened act would harm the recipient and would not significantly benefit the party making the threat, or (c) what is threatened is otherwise a use of power for illegitimate ends.(Exhs. 67, 68, Attorney General Lori Swanson Letter Acknowledging $100,000 dollar Loan to Pondview); (Exh. 53, HRA/C. Serrano First Threatening Letter to Terminator Section 8 Voucher); (Exh. 55, HRA/C. Serrano Second Threatening Letter to Terminate Section 8 Voucher); (Exh. WCHRA100)

**136.**   The Washington County HRA Forced Gentrification Pattern reflects two or more acts within a 10 year period. The Government Entities carried out the practice by aiding and abetting business associates, partners, partnerships, corporations,, DBAs, or their legal entities, or group of individuals with implementing such a Vendetta Gentrification Scheme and must be held to account for treble damages pursuant to Minnesota Statute §481.07.

**137.**   Plaintiff Hunter asserts Defendant Entities, WCHRA Executive Directors, Commissioners willful Gentrification Scheme was both the "but for" and proximate cause of a "**concrete financial injury**".

**FOURTH COUNT OF ACTION**
**CARTWRIGHT ACT**
*(Against All Defendant Entities)*

**138.**   Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein:

**139.**   Defendant Entities WCHRA intentionally violated the Judges Court Order dated December 15, 2011, and engaged in Rack Rental Price  Fixing Rates and *per se* violations of the Cartwright Act.

**140.**   It is unlawful to make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling unit that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap," 1 familial status, or national origin, or an intention to make any such preference, limitation or discrimination. 42 U.S.C. §3604(c).

## FIFTH COUNT OF ACTION
## MINNESOTA FALSE ADVERSING LAW
*(Against Official, Supervisor, Executive Directors, and Entity Defendants)*

**141.**   Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein:

142.   This count is asserted against Defendant Entities WCHRA, and City of Woodbury in Washington County, the City of Saint Paul, and Public Housing Authority, Section 8 Division Executive Directors, Top Officials, Top Supervisors, and Top Management in the State of Minnesota

143.   The Consumer Legal Remedies Act, Civil Code Section 1750 *et. seq.* hereinafter ("CLRA") was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in civil code section §1770.

144.   The CLRA applies to Defendant Entities actions and conduct described herein because it extends to the rental property defined under the Fair Housing Act for personal, family, or household use.

145.   At all times relevant, Plaintiff Hunter and members of class is a resident being overcharged rent as a "consumer" as that term is defined in Civil Code Section §1761(d).

146.   The transaction from which this action arises include Rack Transactions involving the renting of property that was advertised on Craigslist for personal, family, or household purposes  within the meaning of Civil Code §1761.

147.   Each of the Defendant Entities represented that Plaintiff Hunter was not paying above and beyond the "Advertised "Ceiling Market Rental Rate of $920" for 435 Woodduck Place , Woodbury Minnesota, when in fact Hunter is paying $955 in violation of the Court December 15, 2012 Order.  Between November and December of 2012, business associates of WCHRA placed two advertisements on Craigslist above and beyond the amount that Hunter is currently paying for less square footage in the same exact building.

148.   Jenel Sauber has made a Freudian slip and admitted that she would tell the truth about the amount of rent that Plaintiff is currently paying.

149.   Plaintiff Hunter is being gouged for rent as a part of the Vendetta Gentrification Scheme to evict Plaintiff Hunter from refusal to execute her name of Tortfeassor Error HIPPA Forms in exchange for residing at the property, thus warranting civil and **criminal penalties"** ("emphasis added").

150.   Plaintiff Hunter was egregiously injured by WCHRA violating the Judges Court Order of December 15, 2011, as well as, acquiescing to its business associates committing Federal Felony Offenses of **18 U.S.C. §1700 – Taken Charge of Mail, 18 U.S.C. §1701 – Obstruction of Mail, and 18 U.S.C. §1702 – Obstruction of Correspondence, and 18 U.S.C. §1703 – Delay of Mail, and 24 C.F.R. § (c) (5), and 18 USC §4.**

151.     It shall be unlawful to discriminate in the rental of or sale or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a disability and age of the Plaintiff Renter. 42 U.S.C. § 3604(f) (1) (A).

152.    It is unlawful to discriminate against any person in the conditions, terms, or privileges of rental at said dwelling, or in the provision of facilities or services in pertaining to the dwelling because of a disability and refusing to execute her name of Tortfeasor Error HIPPA Forms. 42 U.S.C. §3604(f) (2) (A).

153.    The Act, at 42 U.S.C. § 3602(h), defines "handicap as "(1) a physical or mental impairment which substantially limits one or more of such persons' major life actions  (2) A record of having such an impairment, or (3) being regarded as having such an impairment.

154.    Defendant Entities are prohibited from discriminating against disabled senior citizen individuals such as Hunter under the Act when they are "aware" the disability does substantially impair a major life activity in violation of 24 C.F.R. §100.201(d) (2011).

155.    Major life activities, include but are not limited to, "functions such as **caring for oneself**, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b) (2011).

## FIFTH COUNT OF ACTION
### Fair Housing Act and the
### Fair Housing Amendments Act
### 42 U.S. Code §§ 3601-3619 *et. seq.*, 3631 *et. seq.*,
42 U.S.C. § 3602 *et. seq.;* U.S.C. § 3604 *et. seq.*
### "Retaliatory Class, Disability, Age, Familial Status Discrimination"
*(Against All Defendant Entities, Official, Supervisor, Executive Directors, and Entity Defendants)*

156.  Plaintiff's Hunter hereby incorporates each preceding and succeeding paragraph as though fully set forth herein:

157.  The Fair Housing Act ("FHA") 42 U.S.C. 3601 *et. seq.,* makes it unlawful for WCHRA, City of Woodbury in the County of Washington, City of Saint Paul in the State of Minnesota, the Mpls Dept. of Justice and the Minnesota Attorney General to acquiescence to a Forced Gentrification Scheme:

(a)   [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin. (b) To discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions  of service or facilities in connection therewith, because of disability, color, religion, sex, familial status, or national origin in contravention to 3604(a),(b). The FHA also prohibits discrimination on the basis of disability 3604(f)(1-3)

158.   Plaintiff Dannez Hunter asserts and alleges Defendant Entities treated his differently and targeted his mother by Lonnie F. Bryan, Mpls D.O.J. making statements to force plaintiff mother Inez Hunter into a Shelter and to ban them from entering into housing over a 300+ square mile radius due to discrimination based on disability, class and familial status. The discriminatory pattern, practices, and policies by Minnesota State officials, City of Saint Paul, City of Woodoby adversely impacted the Hunter family with premeditated / calculated intent to stifle competition from Dannez Hunter.

159.   Plaintiff Inez Hunter suffers from ruptured disks in lower back, and several knees surgeries on both knees, and has a disabled pursuant to FHA definition, as "handicap", which includes physical or mental impairment that substantially limits major life activities and Hunter has record of such impairments; and is a person who is regarded as having such an impairment. (Fair Housing Act - §3602(h)); (Americans With Disabilities Act) The several knee surgeries and ruptured disks in her back substantially limits her ability and daily function in life, from a sitting position to a raise position, as well as, walking up a flight of steps or even maintaining her balance.

160.   Plaintiff Hunter asserts and alleges Defendant Entities Mpls. DOJ, WCHRA, City of Woodbury, City of Saint Paul, County of Washington, State of Minnesota, Minnesota Attorney General treated her differently by stating Hunter should apply to a shelter as an African American while White families with ex-offenders were capped at the celling of 3 years.

161.   Plaintiff Hunter asserts Defendant Entities treated her different by refusing to [make certain accommodations] like the have done for Whites under Shaun Dononvan's 3 year maximum policy to prohit ex-offenders from entering into housing.

162.   Defendants Entities WCHRA, City of Woodbury in Washington County, Public Housing Authority of Saint Paul, Section 8 Division in the State of Minnesota, Executive Directors, Top Officials, Senior Management, City Officials, Top Officer retaliated on behalf of their "business associates" against Plaintiff Hunter. Said Defendant Entities committed affirmative federal offenses in the furtherance of the conspiracy of the Rack Rental Gouging Price Scheme, and to serve the Plaintiff with a Vendetta Forced Gentrification Eviction and Notice to Vacate, in retaliation for Plaintiff's refusal to execute her name of Tortfeassor Error HIPPA Medical Forms and Tortfeasor Error Investigation Forms.

163.   Plaintiff asserts on December 4, 2012, at the Court Hearing the Minneapolis Department of Justice, Lonnie F. Bryan on behalf of B. Todd Jones, Assistant Attorney General collude with Leah C. Janus, and WCHRA in a "Quid Quo Pro Deal/Favor" on behalf of its business associates, and moved in Court according the "material instructions" of Magistrate Boylan, to quote on quote **More Sooner than Later to File A Motion To Dismiss"** the Plaintiff's Fair Housing Act Rights Claims.

164.   On December 20, 2012, Plaintiff Hunter asserts and alleges due to a "Quid Quo Pro" deal/favor the Minneapolis Department of Justice submitted false, misleading and fraudulent pleadings upon that were designed to dissuade the Federal Court into a Fraudulent ruling.

165.   Defendant Entities violated the ***Pinkerton Doctrine***, and entered an agreement to commit Federal Offense crimes which are a prerequisite for liability. If such an agreement exists, anyone who joins is liable for offenses (*i.e. Mpls. Dept. of Justice & Leah C. Janus)* as the other Defendant Entities committed the felony offense to advance the objectives of their Rack Rental Agreement. Agreeing to the commission of certain crimes triggered in this case liability. It is not necessary to commit an affirmative

act to advance the goals of the conspiracy. Complicity differs in two respects. First, one can "aid and abet" the commission of a crime without entering into an agreement to do so.

166.   Plaintiff Hunter asserts Defendant Entities in the furtherance of the criminal venture, **committed two affirmative act intended to further the commission of a substantive offense, which included coercing Plaintiff to execute her name of Tortfeassor Error HIPAA Medical Forms as a condition of maintaining residency in the City of Woodbury in Washington County**. On December 20, 2012 ion the furtherance of the Vendetta Gentrification Scheme B. Todd Jones Wrote made the following "quid quo pro" request of a favor upon the Feral Court and admission to the Forced Gentrification Scheme:

**THE COURT:**
"Essentially in **"every major respect"** ("emphasis added") the **"lease" ("emphasis added") will the same**? (Exh. CT 103, pg. 4, lines 8-9); **(Exh. 125, Rent Increase, C. Serrano, HRA, dated 1/5/12)**

### FEDERAL FELONY OFFENSES

**B. Todd Jones, Assistant Attorney General:**
"The issue is not appropriate for a court of law. But assistance is available elsewhere. Washington County Housing and Redevelopment Authority provides such services **www.shelterlistings.org.**

**Shaun Donovan, Secretary U.S. HUD:**
"PHAs must also prohibit admission of an applicant for **"3 years"** from the date of eviction if a household member has been evicted from the federal assistant housing for drug related crime activity." (Exh. 85, Shaun Donovan, U.S. Dept. of Housing and Urban Development 06/17/11)

### "GOVERNMENT SPONSORED FORCED GENTRIFICATION & INSTITIONALIZED RACISM"

Jenel Saber:
"It **will be virtually impossible for you to find rental housing in the future."** **(Exh. 25, J. Sauber, Pondview, Threats)**

167.   For 25 years, the Minneapolis and Saint Paul prosecutors have engaged in a War on Drugs that locked up 3 generations of African Americans for crack cocaine verses pure cocaine. The end result is African American received the felonies while Caucasians received the misdemeanors for the same offense. As both groups were released to the streets African Americans are being denied housing while Caucasians with the same felony offense are being granted housing because of the designation of a misdemeanor. Plaintiff Hunter did not have a drug offense.

168.   Plaintiff Dannez Hunter asserts and alleges the Minneapolis Department of Justice, Lonnie F. Bryan, B. Todd Jones, and Lori Swanson, Minnesota Attorney General "targeted" his mother while **"aiding and abetting"** business associates with carrying-out federal offense of a "Forced Gentrification Scheme" designed to eliminate minority competition by unequally applying the application of Policies and Practices to the benefit of Caucasian verses African American pertaining to Shaun Donovan's June 17, 2011 Policy of a 3 year celling cap to prohibit ex-felons from entering into housing. Plaintiff Hunter asserts the Minneapolis.

169.   Defendant Entities Lonnie F. Bryan, and B. Todd Jones, Minneapolis Department of Justice and Lori Swanson, Minnesota Attorney General knew or should have known when the Minneapolis Department of Justice submitted fraudulent pleadings upon the court to deny plaintiff's Preliminary Injunction that there existed Shaun Donvan's June 17, 2011 Policy with a 3 year cap celling to prohibit ex-felons from living in government funded housing, and the arbitrary actions taken against Hunter reflected a "premeditated pattern" to unequally apply the application of law for African Americans verses Caucasian, and the Minneapolis Department of Justice have committed Federal Offenses by submitting and Opposition regarding Plaintiff's Preliminary Injunction while concealing Shaun Donovan's June 17, 2011 Policy.

170.   Plaintiff asserts Pinkerton recognizes affiliative liability where an individual is deemed to have committed a substantive offense even though that person was not present at its commission and did not physically consummate it. Pinkerton and

accomplice liability are different means for holding the Minneapolis Department of Justice liable for substantive offenses executed by someone with whom that party shared an affiliative relationship pursuant to Minn. Stat. §466.01 *et. seq.*. When identical conduct supports liability under either postulate for the Minnesota Attorney General Office it is necessary to elect between them because, they are merely different means of finding that both the Minneapolis Department of Justice and the Minnesota Attorney General committed certain substantive offenses and/or sanctioned the Forced Gentrification Scheme that was designed to House the disabled Senior Citizen inside a homeless, shelter according to the words of B. Todd Jones, as well as ban Hunter from entering into housing over a 5 state region.

171.    Defendant Entities WCHRA sanctioned its business associates to commit four felony offenses against the bereaved, as business associates knowingly and willfully falsified Tenant Income Verification Forms in retaliation for Plaintiff opposing Northstar Policies in the Tenth District Court and reporting the Rack Rental overcharge on her rent.

172.    Plaintiff asserts Defendant Entities at the behest of WCHRA engaged in **'anticompetitive activities'** to extend and abuse **'monopoly powers,'** by imposing a Vendetta Gentrification Scheme, practices and policies over a 300+ square mile radius in the terms, conditions for said properties and specifically to target African-Americans for adverse actions in the provision of services, as it relates to privileges of rental of a dwelling at any facilities with such dwelling, because of **"exercising and opposing"** unlawful procedures, practices, and policies that are in non-compliance with Federal legislation," thus constituting discrimination based on "familial status," class, handicap, age, in violation of:

42 U.S.C. § 3604(f) (2) (A); and section §813:

b.      On December 20, 2012, Mpls. Dept. of Justice conspired to violate the Cold Weather Act and refused to make reasonable accommodations in policies, services, rules, practices, by opposing the Preliminary Injunction on behalf of their "business associates" that received federal funding and were mandated to afford

Ms. Inez Hunter an equal opportunity to use and enjoy a dwelling, of which violated:

42 U.S.C. § 3604(f) (3) (B); and section §813

c.     Coerced, intimidated, reprisal over a 300+ square mile radius by intentional acts of acquiescence and serving the bereaved with a Gentrification Eviction and Notice to Vacate, thus constituting duress, intimidation, oppression, humiliations, while attempting the degrade Hunter or interfered with Plaintiff's rights in the exercise or enjoyment of, or on account of her having exercised or enjoyed any right granted or protected by the Fair Housing Act, in violation of

42 U.S.C. § 3617, and section §813

d.     Ms. Hunter is an aggrieved person, as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of the Defendant Sauber, Pondview in consort with Northstar Residential' taking adverse retaliatory actions to Falsify TIVFs through direct willful acts of acquiesces constituting discriminatory conduct as described above.

173.   The discriminatory actions of the Defendants were intentional, willful, and taken in disregard of Ms. Inez Hunter federally protected rights.

174.   Pursuant to the requirements of 42 U.S.C. §§ 3610(a) and (b), the Secretary of Kevin Lindsey, HUD and Kimberly Nevels, MDHR erroneously proclaimed not to have "jurisdiction" and refused to conduct a legitimate investigation of the complaint while being derelict in their duties and deliberately covering-up felony conduct of WCHRA business associates to allow them carry out the Forced Gentrification Scheme, and abuse their collusion powers.

175.   Based on the information gathered in the investigation, both the Public Housing Authority Saint Paul, Section 8 Division Executive Director, John Gutzman, Dominic Mitchell, Program Manager, and WCHRA, Executive Director, Programs Manager, and Corina Serrano, violated 42 U.S.C. § 3610(g)(1), while becoming complicit in the Federal Offense and claiming not to have jurisdiction and attempting to

manufacture material false, fictitious evidence in the form of a Tortfeasor Error Forms in order to sanction Northstar's 'collusion abuse' and extend its monopoly arbitrary Rental Racketeering Scheme activities over a 300+ square mile radius to ban the Plaintiff. On or about July 3, 2012, the MDHR failed to issue a Charge of Discrimination ("the Charge") pursuant to 42 U.S.C. § 3610(g)(2)(A), and covered up the Defendants federal offenses while sanctioning them and engaging in discriminatory housing practices in violation of The Fair Housing Amendments Act of 1988 and Housing Discrimination against People with Mental Disabilities, 43 Am. U. L. Rev. §925 (1993-1994))

176. Plaintiff Ms. Hunter rights are protected under the disability provisions of the Act, as they are "regarded as" disabled by the government and Defendants were "aware" and, on that basis, meet the Act's definition of disability, pursuant to 42 U.S.C. § 3602(h). (Exhs. 54, Affidavit of Mr. Hunter dated 121/12/11); (Exh. 73, 74, 75, 76, Affidavit of Inez Hunter dated 12/27/11); (Exh. 46, Mr. Hunter Stamped Soc. Sec. Disability Benefits)

177. Defendants Entities otherwise made housing unavailable over a 300+ square mile radius, while serving Hunter with Gentrification Eviction after refusing to execute her name on Tortfeassor Error HIPPA Medical Records Forms and Tortfeassor Error Investigation Forms and thereafter "hand delivered" a "Notice to Vacate" by C. Serrano at the behest of WCHRA Executive Director and City of Woodbury Officials in violation of 42 U.S.C. § 3604(f)(1)(A). (Exhs. 1, J. Saber, Pondview Retaliatory Letter 09/28/11); (Exhs. 2, 3, J. Anderson, Northstar Retaliatory Letters 10/05/11); (Exh 25, J. Salber, Pondview Retaliatory Letter dated 11/22/11); (Exh. 65, J. Saber Pondview Hand delivered Retaliatory Letter back dated 12/14/11 and delivered 12/18/11); (Exhs. 82, 83, Letter to HUD Secretary Shaun Donovan); (Exhs. 84, 85, Asst. Sect. Sandra Henriquez, U.S. Dept. of Housing & Urban Devlp. Dated 06/17/11)

178. Plaintiffs Hunter asserts Defendants Entities Minneapolis Department of Justice subjected Hunter to intimidation and colluded to file a Opposition to the

Preliminary Injunction with malice intent to force Hunter into homeless shelter at www.shelterlistings.org in violation of 24 C.F.R. §100.400(c)(4).

179.  Defendant Entities WCHRA acquiesced to its business associates submitting fraudulent Tenant Income Verification Forms in violation of 18 U.S.C. §4 and subjected  Plaintiffs to different terms and conditions of rental because Hunter opposed their Rack Rental Increase in violation of the December 15, 2011 Judges Ordered in the Tenth District Court of Washington County, as well as, opposed the Defendant Entities policies to prohibit Section 8 Choice Voucher Holders from transferring into Washington County while receiving Federal Government funding thus constituting  class, age, race, disability and familial status discrimination in violation of 42 U.S.C. §3604(f).

180.  Defendants otherwise made housing unavailable over a 300+ mile radius in violation of 42 U.S.C. §3604 (f) (1) (A), as Plaintiff was humiliated and her son was forced out of the complex after being rehabilitated as an ex-felon.

181.  The federal Fair Housing Act and the Fair Housing Amendments Act (42 U.S. Code §§ 3601-3619, 3631) prohibits Defendant Entities from acquiescing to Federal Offenses while receiving federal dollars and discriminating against a tenant / court witness for opposing a policy and practice to prohibit the transfer of Section 8 Voucher Holders into Washington County, thus constituting familial status, disability, or age discrimination.

182.  Plaintiff Hunter under the law qualifies with a disability as follows:
   i. Hunter is person with a physical disability that substantially limits a person's ability to perform one or more major life activities;
   ii. Hunter is person that has a record of the disability and is a Senior Citizen;
   iii. Ms. Hunter is person that is considered by others as having the disability;
   iv. Types of protected disabilities include mobile, visual, and hearing impairments, mental retardation, alcoholism (if being treated in a recovery program), drug addiction (not caused by the use of an illegal controlled substance), mental illness, HIV, AIDS, and AIDS-Related Complex. (Exhs. 69, 70, 71, 72,

Maurice McGrough Director, Office of Fair Housing & Equal Opp. Region V, dated 12/19/11); (Exhs. 66, MDHR Second Revised Charge of Discrimination by Thomas Barnett)

183.   Plaintiff Mr. Hunter asserts and alleges Defendants Entities WCHRA and Minneapolis Department of Justice utilized diabolical "coercion/intimidation" tactic measures in Case 12-SC-2008MJD/AJB outside the presence of a Judge and subjected Hunter to Class, Disability, Familial Status discrimination in violation of 24 C.F.R. §100.400(c)(1).

## CONCLUSION:

1.   Plaintiff demands a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

2. WHEREFORE, the Plaintiff Inez Hunter prays for relief as follows:

3.   Plaintiff Inez Hunter and Dannez Hunter requests $3.5 million dollars for all of the above claims in the form of damages.

4.   This amount won't reduce damages because of the pattern acknowledged by Police Officer Anne Marie Rasmusson. Plaintiff requests Class Action status for other damages of $100,000,00.00 plus for the injured class by Washington County's Policies. .

5.   Plaintiff seeks a Preliminary and then Permanent Injunction requiring the WCHRA, Saint Paul PHA, City of Saint Paul, City of Woodbury, Washington County, Minneapolis Department of Justice, Minnesota Attorney General to restructure and fire those people who have committed an affirmative act and federal offense in the furtherance of the Washington County/City of Woodbury/City of Saint Paul/State of Minnesota Forced Gentrification Scheme and engaged in discrimination be forced to restructure their organization.  (Exh. 700, 701)

6.   Plaintiffs are aggrieved persons within the meaning of 42 U.S.C. § 3602(i), and Minnesota Statutes, §363A. As such, Plaintiffs suffered damages, including but not limited to, economic loss, emotional distress, inconvenience, embarrassment, retaliation, humiliation and the loss of a housing opportunity as a result of Defendants' **anticompetitive activities** and discriminatory conduct.

7.     A money judgment against all the Defendants for liquidated, actual, and compensatory damages in the amount in excess of Three million five hundred thousand ($3.5 million) Dollars and punitive damages in an amount to be determined by the jury, together with her costs, including reasonable attorney fees, under 42 U.S.C. §1988, the HIPPA, and other applicable laws, and prejudgment interest;

8.     Preliminary and permanently enjoining Defendant from violations of the federal health privacy laws 45 C.F.R. § §164.308(a)(1), .308(a)(3-4), .308(a)(5), .308(a)(6), .310(a)(1), .310(d)(1), and .316 as provided under 42 USC §1320d-5(d)(1)(A); and from violations of Minn. Stat. Ch. §144, Minn. Stat. Ch. 332, and Minnesota's consumer protection laws, Minn. Stat. §325D.43 *et. seq.,* & §325F.68 *et. seq.,*

9.     An Preliminary injunction against the Defendants, their agents, employees, and successors, and all other persons in active concert or participation with any of them, from discriminating on the basis of disability in violation of the Fair Housing Act, as amended, 42 U.S.C. §§ 3601, *et. seq.; section §813*

10.    Awarding judgment against Defendant Entities for statutory damages for all violations by Defendants as provided under 42 USC §1320d-5(d)(1)(B), (2) and for civil penalties pursuant to Minn. Stat. §8.31

11.    Awarding Plaintiff costs of the action and reasonable legal hourly fees to the Plaintiff at $350 dollars an hour, according to law; legal expenses, preparation of documents, postage, transportation expense, and copying costs, plus interest;

**12.    Declare and determine which agency, either U.S. HUD or MDHR has subject matter jurisdiction and the length of time Defendant Executive Directors, Supervisors, and Commissioner's from WCHRA and the DOJ can be banned from Housing upon their release from their Federal Prison Terms.**

13.    Actual damages, punitive damages, attorneys' fees and other litigating costs and such other preliminary and equitable relief as the court determines to be appropriate under 42 USC §1988, 466.01 *et. seq.*

14.   As a proximate result of Defendant Entities' systematic and arbitrary coercion and duress attempts during the inside of discovery, and applicable laws, Plaintiffs are entitled to tremble damages; in addition, to monetary, injunctive, and other equitable relief., pursuant to **42 U.S. Code §§ 3601-3619 et. seq., 3631 et. seq.,** 42 U.S.C. § 3602 *et. seq.;* U.S.C. § 3604 et. seq., of law, and Minnesota Statute, §363A, and 24 C.F.R. §100.400(c)(4).

15.   A declaration that the conduct of Defendants as set forth above violates the Fair Housing Act, as amended, 42 U.S.C. §§ 3601, *et. seq.;*

16.   An award of monetary damages to Freeman Price, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

17.   Enjoins  Defendants their agents and employees, successors and all other persons in active concert or participation with them from discriminating on the basis of disability, age or familial status against any person in any aspect of the purchase of rental of a dwelling;

18.   Awards such treble damages as will fully compensate Plaintiffs, aggrieved persons, for their actual damage caused by Defendants' discriminatory conduct pursuant to 42 U.S.C. §§ 3604(c), (f)(1)(A), and (f)(2)(A); and

19.   Awards a $16,000 civil penalty against each Defendant for each violation of the Act committed pursuant to 42 U.S.C. §3601, *et. seq.:*

20.   Awards a $16,000 civil penalty against each  Defendant for each violation of the Act committed pursuant to 42 U.S.C. §3612(g)(3);

21.   The  Plaintiff prays for further additional relief as may be appropriate under 42 U.S.C. §3612(g)(2);

22.   Identical to the federal FCA, the Minnesota FCA allows $5,500 to $11,000 per false claim plus three times the amount of damages actually incurred by the state.

23.   For treble Damages for Reprisal for violations of **Minnesota Statutes §363A.09  Subd. 1(2) and  §363A.15(1)**

24.   Plaintiff Inez Hunter requests $5.0 million dollars total for all of the above causes of action cited in this complaint in the form of treble damages before the jury is selected, and liquidation and/or confiscation of property or 5 acres of land within Washington County.

25.   For such other and further relief as this Court deems just and proper, plaintiff requests Class Action Status for the remaining Disabled Class that were denied the ability to transfer their Section 8 Voucher's into Washington County, as well as those disabled Plaintiff displaced a proximate result of a Forced Gentrification Scheme to eliminate minority competition .

I declare under the penalty of perjury that all of the above and herein are true and correct to the best of my knowledge and belief pursuant to the laws in the State of Minnesota, and if called to testify to the same, I could and would testify accordingly.

DATED this _11_ day of January, 2013

Submitted,

INEZ HUNTER, *Pro - se*
435 Woodduck Place
Apt. H. Box 15
Woodbury, Minnesota 55125
hunterinez@yahoo.com

Submitted,

DANNEZ HUNTER, *Pro-Se*
Owner
Afristocks.com, Brazitrade.com
P.O. Box 75472
St. Paul, Minnesota 55175